Carpenelli, Appellant, *v.* Scranton Bus Company.

Argued May 25, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Carlon M. O'Malley,* with him *Irving L. Epstein,* for appellant.

*Walter W. Harris,* of *O'Malley, Hill, Harris & Harris,* with him *James W. Scanlon,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 30, 1944:

In this appeal plaintiff complains that the verdict in his favor is inadequate. He testified that at the time of the accident he was 57 years of age, that on the evening of May 28, 1942, he was a passenger on a bus of the defendant company, and that in alighting therefrom he had one foot on the step and the other reaching for the ground when the bus "went back and forth, back first and front afterwards", causing him to fall. There were two ladies in the bus who happened to be acquainted with him, one of whom testified that "The bus came to a stop. He had one foot on and was ready to step off when this bus went down a little ways and started up with a well— I would say, with a fast start, and threw Mr. Carpenelli right off the step. It went back a little way and started up real fast." The other lady testified that she did not see plaintiff get off but after the accident saw him lying about ten feet back of the bus entrance. On the other hand, the operator, who had been employed as such by the defendant company for about fifteen years, and five passengers, all of whom were wholly disinterested, testified that the bus was stationary when plaintiff fell and that it made only one stop at the point of the accident. Several of these witnesses stated that plaintiff carried in his left hand a mason's level about four or four and a half feet long and four or five inches wide and also a bag of tools (which plaintiff admitted weighed twenty-five pounds) about eight or nine inches wide and a foot and a half long; they testified that when he started to alight he used the level as a cane or support, placing the bottom of it on the step of the bus, and as he proceeded out he tripped over it; some of them added that after he fell he lay immediately in front of the entrance doorway.

Plaintiff was severely injured. He sustained a fracture of the femur of the right leg. The parts not being in good alignment a splint was applied and afterwards a wire inserted and traction put on either end in an attempt to obtain better approximation of the fragments. A month later there was an open reduction operation and a silver plate was screwed on reenforced with metal wire. Then the leg was immobilized for several months in a plaster cast. The patient was a year in the hospital, nine months of which he was confined to bed. As a sufficient quantity of callus did not form at the site of the fracture the medical experts testified that there would never be a good union and that plaintiff would not be able to do any kind of manual work. The right leg is now shortened to the extent of an inch to an inch and a half, and there is a fibrous ankylosis or stiffening of the knee joint. Of course he suffered considerable pain, with occasional discomfort at present during changes of weather, and he also complains of sleeplessness. He was still using crutches at the time of the trial, eighteen months after the accident. His actual hospital and medical expenses amount to $2,628.45. He testified to various employments he had had in his occupation of stone mason, from which it appeared that his average yearly earnings for a period of two years and five months prior to the trial were $888. However, after categorically denying that he had ever been on public relief except for four weeks in 1938, he later, when confronted with the files of the Department of Public Assistance, admitted he had testified falsely in that regard and that he had received relief ($4.40 a week) in 1939 and again in 1942, indeed immediately prior to and at the very time of the accident, his last relief check coming to him while he was actually in the hospital.

The jury returned a verdict for plaintiff in the amount of $3,000. He moved for a new trial on the ground that the amount was inadequate. The motion was refused, hence this appeal.

When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: *Schwartz v. Jaffe,* 324 Pa. 324, 188 A. 295; *Pretka v. Wilson,* 325 Pa. 491, 190 A. 722. When a trial court *refuses* to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action. It was said by President Judge Rice in *Palmer v. Leader Publishing Co.,* 7 Pa. Superior Ct. 594, 598: "The power to grant a new trial because of the inadequacy, as well as the excessiveness, of the damages allowed by the jury is undisputed, but this power is much more rarely exercised in the former than in the latter case. If such caution is properly exercisable by the trial court, much more cautiously should an appellate court proceed where the trial court, after a conscientious review of the case, has refused to set aside the verdict. No mere difference of opinion, nothing short of a clear conviction, compelled by the evidence, that the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence, will justify an appellate court in declaring that the trial court was guilty of an abuse of discretion in refusing a new trial for inadequacy of damages where neither the evidence in the particular case nor the law applicable thereto furnished any definite standard by which they might be measured, and the jury had no other guide in arriving at the amount to be awarded but pure conjecture." The principle thus enunciated has been followed in many later cases in the Superior Court, where the question has more frequently arisen than here,—for example: *Woodward v. Consolidated Traction Co.,* 17 Pa. Superior Ct. 576; *Donoghue v. Consolidated Traction Co.,* 17 Pa. Superior Ct. 582; *Chestnut v. Autocar Co.,* 53 Pa. Superior Ct. 1; *Jones v. Pennsylvania Co.,* 60 Pa. Superior Ct. 438; *Zamojc v. Fisher,* 127 Pa. Superior Ct. 171, 193 A. 315; *Patterson v. Pittsburgh Rwys. Co.,* 136 Pa. Superior Ct. 432, 7 A. 2d 478; *Stevens v.*

*Frank,* 151 Pa. Superior Ct. 222, 30 A. 2d 161; (see also *John, Administratrix, v. Pittsburgh Rwys. Co.,* 349 Pa. 159, 36 A. 2d 818). Indeed, it would seem that it is only where the verdict was merely nominal that the appellate courts have looked askance on a refusal of the trial court to set it aside and grant a new trial: *Bradwell v. Pittsburgh & West End Passenger Rwy. Co.,* 139 Pa. 404, 413, 414, 20 A. 1046, 1047; *Spence v. Stockdale Borough,* 57 Pa. Superior Ct. 622; *Hammaker v. Watts Township,* 71 Pa. Superior Ct. 554.

When the complaint is that a verdict is *excessive* the problem is comparatively simple, because a conclusion may fairly be reached as to the maximum amount to which the plaintiff was entitled and therefore any sum beyond that amount necessarily represents an improper recovery. And, when liability is admitted by the defendant, or when the evidence is clearly preponderant in favor of the plaintiff, it is likewise possible to say, with some fair measure of certainty, whether the verdict properly covered the items of damage for which recovery should have been allowed or whether it was *inadequate.* But when the evidence is equally divided in weight, or, a fortiori, when the preponderance of testimony is clearly with the defendant and the verdict rendered for the plaintiff, while small, is substantial, the problem becomes one of an entirely different nature, for in such event it can no more reasonably be said that the plaintiff recovered too little than that he should not have recovered at all; therefore, in such a case, it is just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff.

Reverting to the present record, the preponderance of testimony was so strongly in favor of defendant that it is at least doubtful whether it would not have been entitled to a new trial had it applied therefor. The court, in its opinion, said that "The verdict seemed to the court to be merely a sympathetic verdict, not warranted by the

weight of the evidence." In the number of witnesses, in their disinterestedness, in the clarity of their testimony as to the happening of the accident, in the plausibility of their version of the occurrence,—in all these factors the advantage was markedly on the side of defendant. Moreover, plaintiff, by his own admission, was guilty either of having improperly obtained moneys on relief or of perjury at the trial in testifying to employment when in fact he was unemployed; the jury was well justified, therefore, in not allowing him anything for loss of past earnings or diminution of earning capacity, especially in view of his age and of his comparatively small returns—even as claimed by him—in 1942 when, as is well known, labor was at such a premium.

Some complaint is made of remarks of the learned trial judge during the course of his charge which, it is contended, may account for the small size of the verdict. It is true that several times the court referred to plaintiff as being old and infirm, but the jury saw plaintiff, heard him state his age, and could judge for themselves as to his likely ability to work. His own physician testified that he was suffering from arteriosclerosis, his appearance seems to have been one of an older person, and it is perhaps significant that when he entered the bus, according to one or two of the witnesses, somebody offered him a seat. The repeated references to his being old were as well calculated to cause the jury to view his claim sympathetically as adversely. The court's statement that "the bones of the aged do not knit and they are brittle", was nothing more than a platitude, a fact of common knowledge. While the jury were told that they must consider whether the bus gave a lurch while plaintiff was alighting or whether his fall was "due to an unfortunate infirmity of age," in other parts of the charge the court clearly explained that defendant's version of the accident was that plaintiff tripped over his mason's level; moreover, it was intimated throughout defendant's testimony that plaintiff's age and feebleness contributed to

the occurrence. The court instructed the jury that notwithstanding plaintiff's false swearing in denying that he had been on relief they were not bound to disregard all of his testimony and that he would still be entitled to a verdict if the accident was due to defendant's negligence. On the whole, a careful reading of the charge leads to the conviction that it was eminently fair to plaintiff; indeed, plaintiff's counsel himself felt obliged to call the attention of the trial judge to the fact that he had neglected in the charge to mention some of defendant's witnesses.

We are satisfied that if the verdict of the jury was unjust it is not plaintiff who has reason to complain.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE DREW:

After reading this record, I cannot concur in the conclusion which the majority has reached. In view of the very serious and permanent nature of plaintiff's injuries, his great expense for hospital and medical attendance, the pain and suffering which he has and will endure as a result of the negligence of defendant, and his loss of past and future earnings, I am convinced that the verdict is, as was said in *Palmer v. The Leader Publishing Co.*, 75 Pa. Superior Ct. 594, 598, so unreasonable as to bring conviction "the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence." Under these circumstances, it is a denial of justice, in my opinion, not to grant a new trial to plaintiff on account of the verdict's inadequacy.

The jury, by its finding in favor of plaintiff, determined that his injuries were caused by defendant's negligence and that he himself was free from contributory negligence. It is undisputed that as a result of the accident plaintiff suffered a fractured thigh bone close to the point where it joins his body, that he was confined in the hospital for approximately a year, most of which

he spent in bed, that he had three operations up to the time of trial in an attempt to reset and cause the bone to heal, that his leg is still 1½ inch shorter than the other and there is no complete union of the bone, that he will never be able to follow his trade as a stone mason. It is also undisputed that he has and will continue to suffer much pain and inconvenience. Conceding, arguendo, that the statement of the majority be correct that "plaintiff, by his own admission, was guilty either of having improperly obtained moneys on relief or of perjury at the trial in testifying to employment when in fact he was unemployed; the jury was well justified, therefore, in not allowing him anything for loss of past earnings or diminution of earning capacity", yet, it is perfectly clear that the amount of this verdict barely compensates plaintiff for his actual outlay of $2,628.45 for hospital and doctor bills, and gives him practically nothing for the other damages suffered by him, aside from the loss of past earnings or diminution of earning capacity. Under such circumstances, I am of the opinion that the verdict cannot be said to be substantial.

The court below in refusing a new trial stated that "The verdict seemed to the court to be merely a sympathetic verdict, not warranted by the weight of the evidence." If that be so, then the court abused its discretion in not granting a new trial for that reason, if for no other.

I would, therefore, grant a new trial.

·    ·    ·    ·    ·    ·

Mr. Chief Justice MAXEY and Mr. Justice HUGHES join in this dissent.