Nikisher, Appellant, *v.* Benninger.

Argued January 13, 1954; submitted April 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Laurence H. Eldredge,* with him *Martin H. Philip* and *Philip & Philip,* for appellants.

*Boyd H. Walker,* with him *Walker & Walker,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 25, 1954:

These appeals are from the refusal of the court below to grant a new trial in a trespass action arising from an automobile accident. David Nikisher, a minor, was a guest passenger in the automobile of Carl H. Benninger, the defendant. The suit is by the guardians of the minor. Julius Nikisher and Thelma B., his wife, parents of the minor, have joined in the suit in their own right. The guardians of the minor appeal because of the inadequacy of his verdict, $1,500. The parents, while entirely satisfied with the amount of their verdict, $5,000, appeal, according to their counsel, as "a purely formal proceeding for the purpose of con-

ferring jurisdiction upon [the Supreme] Court". Counsel for appellants, in their supplemental brief, correctly recite the procedural history: ". . . a judgment of $5,000 was entered for the parents plaintiffs and a judgment of $1,500 for the minor plaintiff. Initially, one appeal was taken from the $1,500 judgment, but no separate appeal was taken from the $5,000 judgment because there was no complaint as to it. When the original appeal was orally argued before this Court on January 13, 1954, the question was raised from the Bench that the Court did not have jurisdiction of the single appeal from the $1,500 judgment. On January 14, 1954 this Court remitted the appeal to the Superior Court. Thereafter, on January 20th, the parents plaintiffs appealed to this Court from the $5,000 judgment and the case was docketed in this Court as of January Term, 1954, No. 124. A petition was then filed in the Superior Court reciting this fact and calling attention to Section 5 of the Act of May 5, 1899, P. L. 248 as amended and to Section 2 of the Act of June 11, 1935, P. L. 301. On February 4, 1954, the Superior Court certified the appeal on the $1,500 judgment back to the Supreme Court of Pennsylvania for consideration and decision, . . ."

The sole question is whether the court below abused its discretion in refusing to grant a new trial. While counsel for appellee state in their paper book "as far as the issue of defendant's negligence was concerned, it was seriously disputed" no appeal has been taken by appellee. Liability of defendant must, therefore, be regarded as conceded.

The minor appellant undoubtedly assumes a heavy burden when he presses for a new trial on the ground of inadequacy of the verdict. In *Carpenelli v. Scranton Bus Company*, 350 Pa. 184, 38 A. 2d 44, the rule is accurately stated by Mr. Justice HORACE STERN (now

Chief Justice) (p. 187): "When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: Schwartz v. Jaffe, 324 Pa. 324, 188 A. 295; Pretka v. Wilson, 325 Pa. 491, 190 A. 722. When a trial court *refuses* to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action. . . ."

The language of President Judge RICE in *Palmer v. Leader Publishing Co.*, 7 Pa. Superior Ct. 594, was quoted with approval (p. 187): " '. . . No mere difference of opinion, nothing short of a clear conviction, compelled by the evidence, that the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence, will justify an appellate court in declaring that the trial court was guilty of an abuse of discretion in refusing a new trial for inadequacy of damages where neither the evidence in the particular case nor the law applicable thereto furnished any definite standard by which they might be measured, and the jury had no other guide in arriving at the amount to be awarded but pure conjecture. . . .' "

The opinion states (p. 187): "The principle thus enunciated has been followed in many later cases in the Superior Court, where the question has more frequently arisen than here." It is also said (p. 188): ". . . Indeed, it would seem that it is only where the verdict was merely nominal that the appellate courts have looked askance on a refusal of the trial court to set it aside and grant a new trial: [citing cases]." But by the use of this language we did not state, or intend to decide, that a new trial because of inadequacy would be granted *only* where the verdict was *nominal*. In *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86, this

Court, speaking through Mr. Justice JONES, stated accurately (p. 395): ". . . The grant or refusal of a new trial for inadequacy of the verdict is a matter for the sound discretion of the trial court whose action will not be reversed on appeal except for a clear abuse of discretion such as where a new trial is refused when the verdict is so unreasonably low as to present a clear case of injustice: Fabel v. Hazlett, 157 Pa. Superior Ct. 416, 422, 43 A. 2d 373; Patterson v. Pittsburgh Railways Company, 136 Pa. Superior Ct. 432, 7 A. 2d 478; and Zamojc v. Fisher, supra, at pp. 172-173. The record in this case discloses no such abuse."

In *Paustenbaugh v. Ward Baking Company,* 374 Pa. 418, 97 A. 2d 816, Mr. Justice ARNOLD meticulously reviews the above cases and reaffirms the principle of law.

We are, therefore, required to review the evidence in order to determine whether or not the verdict is so unreasonably low as to present a clear case of injustice. In this connection we must also determine whether a trial error has been committed affecting the question of the extent of the amount of the damages.

No question of defendant's negligence is presented by this appeal. Liability must, therefore, be conceded. The trial judge stated in his charge: "It has been a very serious case." It was testified that the minor plaintiff, at the date of the accident, November 24, 1950, was seventeen years of age, in school and in good health. As a result of the accident he had a compound fracture of the left femur, with the bone protruding through the skin, abrasions of the left hip, both knees and ankles and laceration of the thigh where the bone had torn through the muscles. There was an open reduction operation, with an incision eight to ten inches long, which opened the thigh to the bone. A plate was screwed to the bone fragments and a ten pound plaster

cast applied to the entire leg. The plaintiff required two blood transfusions, catheterization, and was immobilized with sand bags for eight weeks and then taken home and placed in bed. He was able, with the aid of crutches, to get out of bed to attend to calls of nature. On February 2, 1951, while out of bed for that purpose, he slipped and fell and broke the plate which held the bone fragments in position. Until February 2nd he had spent ten weeks in bed and the last two at home. He was taken back to the hospital. A twenty-five pound plaster cast was then placed on his left leg and around the pelvis which remained on for five weeks during which time the patient could not move or turn. The bone fragments did not unite so a second open reduction operation was performed with another incision eight to ten inches long and another plate screwed in. He was returned home May 5, 1951. Therefore, he had two serious operations and was flat on his back for twenty-three weeks, twenty-one of which were spent in the hospital. On his return home he remained in bed for another twenty weeks and was taken every month by ambulance to the hospital for X-rays. He was required to wear a heavy leather and metal brace. It was testified that he suffered and still suffers severe pain. He has permanent disfiguring scars and there will be permanent disability of about fifteen per cent in the use of his leg. At the time of the trial, two years and five months after the accident, he still was required to use a cane and walked with a pronounced limp. Plaintiff has not yet been able to engage in any work for which he is fitted.

In the recital of the facts it will be observed that reference is made to the second injury caused by a fall during plaintiff's convalescence. The trial judge left it to the jury to determine whether the second accident had relation to the first injury. He instructed

the jury that if it did *not* defendant would not be liable for damages for the second injury. The following conversation took place between counsel for *defendant* and the court: "BY MR. WALKER: 'I would like you to charge that the fact that the Plaintiff's hand slipping could be considered contributory negligence on his part, and if that is the proximate cause'—[BY THE COURT:] 'If they so feel, that the slipping of the hand was a separate act of negligence on the part of the Plaintiff, they may consider that as a separate action in itself and the Defendant would not be liable for that.' BY MR. ELDREDGE: 'Your Honor will grant me an exception to that point?' [BY THE COURT:] 'Yes'." The correct question was not *negligence,* but whether the injured leg gave way from weakness and not from an independent accident. In other words, if the injured leg had been sound and well, would it have given way when plaintiff's hand slipped? There was no evidence of *negligence* before the jury in relation to slipping. The charge as given appears to be accurate, but the answer to defendant's point for charge confused the issue where the court said the defendant would not be liable "[i]f [the jury] feel[s], that the slipping of the hand was a separate act of *negligence* on the part of the Plaintiff, . . ." We do not agree with the court in banc: "If there was any error in the instructions in this respect, it must have been harmless error."

We will not undertake to enter into a discussion of proximate cause of the second accident. Unquestionably varying circumstances could result in fine distinctions. If in truth and in fact the second accident was caused by the weakened condition of the leg due to the original .accident, the *second* injury may properly be referred back to the *original* injury: Restatement, Torts, §§ 459 and 460; *Wineberg v. DuBois*

*Boro.*, 209 Pa. 430, 58 A. 807; *Bender v. Welsh*, 344 Pa. 392, 25 A. 2d 182; *Todd v. Bercini*, 371 Pa. 605, 92 A. 2d 538; *Gallagher v. Hudson Coal Company*, 117 Pa. Superior Ct. 480, 178 A. 161. The testimony as to the second injury is most meager. If what happened to plaintiff while attending a call of nature, as permitted by his physician, was accidentally caused by placing weight on the injured hip or leg which failed to support him and, in consequence, he fell and was again injured in the same leg as the original injury, there can be no question but that it was the weakened condition of the injured limb which caused the second injury and for which defendant would be liable in damages.

We decide (a) as above indicated, there was a trial error which necessitates a new trial (b) the verdict for the minor plaintiff is so unreasonably low that it presents a clear case of injustice.

Since we are granting a new trial insofar as the minor plaintiff is concerned we have concluded that the judgment in favor of the parents of the minor must also be reversed and a new trial granted as to them: *Taylor v. Rounds*, 349 Pa. 157, 36 A. 2d 817; *Biehl v. Rafferty*, 349 Pa. 493, 37 A. 2d 729.

The judgments are reversed and a new trial granted.