Sharpe, Appellant *v.* Steel.

Argued December 17, 1964. Before ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

*James Thomas McDermott,* for appellant.

*John J. O'Brien, Jr.,* for appellee.

OPINION BY WRIGHT, J., March 18, 1965:

On the evening of April 3, 1959, Shelton C. Sharpe was operating a Yellow Cab in a southerly direction on Broad Street in the City of Philadelphia. He stopped for a red traffic light at the intersection of

South Street. While the cab was in a stationary position, it was struck in the rear by a motor vehicle operated by John Steel. For personal injuries sustained in this collision, Sharpe instituted a trespass action in Court of Common Pleas No. 3 of Philadelphia County. The witnesses at the trial, in addition to the plaintiff, were two physicians, a dentist and a representative of the Yellow Cab Company. The defendant did not testify and called no witnesses. The jury returned a verdict in the amount of $1,800.00. The plaintiff filed a motion for a new trial on the ground of inadequacy. From an order of the court below dismissing this motion, the plaintiff has appealed.

Plaintiff testifed as follows: "I was waiting for the light to turn green, and then I heard this loud noise, boom, and I felt myself going up in the air. Then I didn't know anything else until I was beside the wall at Broad and South there . . . I felt this blood in my mouth, and I was trying to focus my vision, but it was blurred and I could see like two of each. I felt this lump between my eyes . . . I was very sore in my neck and my back, and my chest was hurting me. My mouth was swollen . . . and I could hardly speak clearly". After receiving emergency treatment at the Graduate Hospital, plaintiff spent several days at home in bed. He was then treated at the Yellow Cab clinic for three days. Because of injuries to his teeth, he was sent to two different company dentists and finally consulted his own dentist, Dr. Ernst H. Wesley. For his back injuries plaintiff consulted Dr. Richard Kaplan, who ordered x-rays by Dr. Paul S. Friedman. Plaintiff also consulted Dr. Robert P. Bass who gave him heat treatment and massage, and prescribed a neck brace. The testimony of Doctors Kaplan, Friedman and Wesley will be detailed in the following paragraphs. Dr. Bass was not available as a witness.

Dr. Kaplan, an orthopedic surgeon, testified that x-rays of plaintiff's neck and back disclosed "a loss of the normal curve due to spasm, and a reduction in the range of motion . . . From a strictly orthopedic standpoint, most of the findings were related to his neck . . . I felt that his limitation of motion . . . was in the range of 50 per cent of normal. This was accompanied by complaint of pain referable to between the shoulder blades . . . and indicates a nerve root impingement . . . I felt at this time that this man had sustained an injury to the supportive tissue of the neck, what we refer to as a ligamentous sprain". Plaintiff was treated by moist heat, electric stimulation and massage. This treatment continued for two months. On March 14, 1960, plaintiff complained to Dr. Kaplan of a recurrence of his neck pain. He was treated with a muscle relaxant and, given physical therapy for several weeks. The total bill for Dr. Kaplan's services was $157.00.

Dr. Friedman, the radiologist, testified that x-rays taken on April 21, 1959, disclosed that plaintiff's spine "did not have the normal relationship and function . . . There was a reduction in the ability of the spine to change his position . . . On the basis of our interpretation this indicated that the muscles were in spasm". Dr. Friedman took additional x-rays on November 2, 1959, and found that "there was again reduction in the forward curve of the spine and at this time he could not extend it normally". The fifth cervical vertebra was reduced in height and changed in shape to an overall extent of 12 per cent, which indicated "that this vertebra had been injured and then was compressed . . . so we concluded therefore that this was a compression fracture of the body of the fifth cervical vertebra". X-rays were taken again on December 12, 1959, confirming the deformity in the fifth cervical vertebra. The total bill for Dr. Friedman's services was $260.00.

Dr. Wesley testifed that plaintiff received severe lacerations of the lips which required treatment. Because of traumatic injury, the upper left central and lateral incisors and third molar had to be extracted and replaced with a partial denture. Two lower teeth, the right and left cuspids, were fractured but did not require extraction. They were restored with crowns. Dr. Wesley's total bill was $298.00.

Albert Spink, representing the personnel department of the Yellow Cab Company, detailed plaintiff's visits to the company clinic and the services rendered in total amount of $127.00. This witness also testified that plaintiff's average wage for a five day week on a commission basis, not including tips, was $65.82, and that plaintiff lost a total of 48 days work. As calculated in the charge of the trial judge, the gross amount was $498.65. However, as argued in appellant's brief, this calculation was inaccurate. The correct amount, not including tips, was $631.68.

Our study of this record leads us to agree with appellant's contention that the verdict does not bear a reasonable relation to his special damages, and that he was consequently deprived of the full amount of recovery which his evidence commanded. It is important to note that, so far as liability is concerned, this was not a compromise verdict. Appellee's brief concedes that "the defendant did not dispute liability for the accident". Here pertinent is the following statement by Mr. Justice MUSMANNO in *Bedillion v. Frazee,* 408 Pa. 281, 183 A. 2d 341: "Once the jury concludes that the defendant in a trespass case is guilty of negligence and there is no contributory negligence, it must award the full amount of damages which the evidence commands".

In his opinion for the court below, as he did in his charge to the jury, the learned trial judge minimized the evidence which appellant introduced. We cannot

agree that this evidence was the subject of "confusion", or that it was in any sense "equivocal". The total amount of special damages actually proved was $1,473.68. This does not include the charge of Dr. Bass, the cost of the neck brace, or any allowance for loss of tips. Appellant was clearly entitled, in addition, to a reasonable amount for pain and suffering, for injury to the vertebra, and for permanent loss of teeth with resulting disfigurement.

The cases cited by appellee[1] are not controlling. This is not a situation where the evidence as to negligence or contributory negligence was conflicting. In the words of Mr. Justice EAGEN: "We realize that the grant of a new trial because of inadequacy is a matter for the sound discretion of the trial court whose action should not be disturbed on appeal except where there is a clear abuse of discretion . . . By the same token, appellate courts do not abdicate their powers of review to see whether or not the denial of a new trial constituted an injustice or a clear abuse of discretion and will act where such exists": *Hose v. Hake,* 412 Pa. 10, 192 A. 2d 339. It is our view that, on this record, justice demands a new trial.

Order reversed, and a new trial is awarded limited to the question of damages.

---

[1] *DeQuinze v. Milliron,* 410 Pa. 568, 190 A. 2d 440; *Elza v. Chovan,* 396 Pa. 112, 152 A. 2d 238; *Ischo v. Bailey,* 403 Pa. 281, 169 A. 2d 38; *Simpkins v. Richey,* 192 Pa. Superior Ct. 46, 159 A. 2d 17.