## Black, Appellant, v. Ritchey.

Argued April 18, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Newton C. Taylor,* with him *Taylor & Taylor,* for appellant.

*R. Merle Heffner,* with him *Samuel H. Stewart,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 11, 1968:

We allowed an allocatur from the Order of the Superior Court, which affirmed the Judgment of the Court of Common Pleas which had denied plaintiff's motion for a new trial. Plaintiff contends that the jury's verdict was inadequate.

On December 20, 1963, at about 5:30 in the evening, plaintiff was standing on the *paved portion* of a 20-foot-wide rural public highway in Fulton County beside his automobile, which had been disabled by a flat left rear tire. The weather was cold and clear, it was dark, and there was snow along the sides of the road. Plaintiff's parked vehicle had its parking lights on. The evidence was conflicting in regard to where plaintiff had parked his automobile in order to fix the tire, and where he was standing when hit, and as to the negligence of each of the parties.

### Summary of Plaintiff's Testimony

Prior to the accident, plaintiff had parked his car off the highway at a distance of about 100 feet from

the point of the collision. Plaintiff testified that upon his return from work he noticed that his left rear tire was going flat. He testified that the tire could not have been changed at the place where the car now was parked, so he began to drive to a service station. However, he quickly realized that the tire was completely flat, and he therefore pulled the car over to the right side of the road in order to fix the tire. Plaintiff admitted that he had a clear vision for 1,000 feet but did not see the defendant until defendant was a few feet away, at which time he saw a flash of light just before he was hit.

Plaintiff suffered severe injuries. According to his testimony, he suffered a head injury, a fractured pelvis, and a knee injury which might require further surgery. Plaintiff's medical expenses amounted to approximately $1,900, and he claimed he lost earnings in the amount of $932.64. The jury returned a verdict for plaintiff in the amount of $3,500.

### Summary of Defendant's Testimony

The testimony by defendant and his witnesses was in sharp contrast and conflict with that of plaintiff. The Pennsylvania State Police officer who investigated the accident and examined the scene on the night of the accident testified that plaintiff's tire could have been changed at the point where plaintiff first found his automobile. Additionally, and in further contradiction of plaintiff, a police officer testified that plaintiff's car at the time of the accident was *partly on the paved portion* of the highway and that he (the officer) found it necessary to direct traffic around the vehicle until it was moved. Defendant testified that he saw plaintiff's car when he was about 200 feet away; that it was parked about a foot on the hard-

surfaced highway; that when he was about 20 feet away, plaintiff was down on his haunches on the highway; that plaintiff jumped up right in front of defendant's car and staggered into the side of the car, hitting the windshield and breaking a hole clear through it.

Our scope of review in deciding whether the lower Court should have granted a new trial *on the ground that the verdict was inadequate* is whether the lower Court committed a clear or gross abuse of discretion. *Greco v. 7-Up Bottling Co. of Pgh.*, 401 Pa. 434, 165 A. 2d 5, and cases cited therein; *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 38 A. 2d 44; *Nikisher v. Benninger*, 377 Pa. 564, 105 A. 2d 281; *Karcesky v. Laria*, 382 Pa. 227, 114 A. 2d 150; *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86.

In *Carpenelli v. Scranton Bus Co.*, 350 Pa., supra, the Court well said (page 187) : "When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: Schwartz v. Jaffe, 324 Pa. 324, 188 A. 295; Pretka v. Wilson, 325 Pa. 491, 190 A. 722. When a trial court *refuses** to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action."

In the instant case, the evidence on the question of defendant's negligence and of the plaintiff's negligence and contributory negligence was conflicting, and, if anything, the weight of the evidence on these issues was on the side of the defendant; therefore, as a practical matter, the jury obviously brought in a compromise verdict. This Court has repeatedly upheld compromise verdicts when they have been substantial and where the evidence was conflicting or was not clear

* Italics in original opinion.

on the question of liability or of plaintiff's contributory negligence.

In *Karcesky v. Laria*, 382 Pa., supra, the Court said (page 234) : "The doctrine of comparative negligence, or degrees of negligence, is not recognized by the Courts of Pennsylvania, but as a practical matter they are frequently taken into consideration by a jury. The net result, as every trial judge knows, is that in a large majority of negligence cases where the evidence of negligence is not clear, or where the question of contributory negligence is not free from doubt, the jury brings in a compromise verdict. Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his other witnesses say, even though their testimony is uncontradicted."

It is apparent from the record in this case that there was a serious question of defendant's negligence and of plaintiff's contributory negligence, and where, as here, the verdict was more than nominal, we cannot find that the trial Judge who saw and heard the witnesses clearly or grossly abused his discretion in refusing to grant a new trial because of the alleged inadequacy of this verdict.

We have considered all the other contentions made by plaintiff, and find no merit in any of them.

Order affirmed.

Mr. Justice EAGEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

When a litigant wins a verdict which entitles him to be paid in gold, it is not just that he should be paid in copper.

The jury impaneled in this case rendered a verdict in favor of the plaintiff, Robert Eugene Black. By so

doing they found that the defendant, Harrison L. Ritchey, was negligent in striking Black down on the highway. They found further that Black did not contribute to the happening of the accident by any act of negligence on his part. Thus, under the law of the Commonwealth Black was entitled to reimbursement for all medical bills incurred and still to be incurred, compensation for loss of past earnings, remuneration for impairment of earning power, and for pain and suffering. The jury returned a verdict of $3500, which, in comparison to the enormous losses suffered and to be suffered by the plaintiff, was like applying a band aid to a severed pumping artery.

Even the Majority Opinion admits that the plaintiff's injuries were "severe." They were more than severe. To the plaintiff they were disastrous. He sustained a fractured hip, a 20% impairment in the function of his knee, he has lost acuteness in the sense of hearing, he suffers constant painful headaches, he was in the hospital 43 days, he could not work for 11 weeks, he must wear a knee brace for the rest of his life. His medical bills amounted to $1,834.20, which will be increased by $1,000 for another operation which the doctors recommend. He lost wages in the amount of $932.64. Thus, his out-of-pocket expenses amounted to $2,806.84. This means that he was given only $793.16 for pain and suffering, nothing for impairment of earning power, nothing for the $1,000 bill coming up for another surgical operation.

The verdict is thus obviously inadequate which, traditionally, entitles the plaintiff to a new trial. In *Todd v. Bercini*, 371 Pa. 605, this Court said: "If Mrs. Todd was entitled to a verdict from the defendant because of the injuries he inflicted upon her as the result of his negligence, she was entitled to *all* that the law provides in such a case. And the items of pain,

suffering and inconvenience, as well as loss of wages and impairment of earning power, are inevitable concomitants with grave injuries when suffered by a wage earner. A jury may not eliminate pain from wounds when all human experience proves the existence of pain, and it may not withhold lost wages when the evidence in the case uncontradictedly establishes the loss of wages as the result of the negligence which they, the jury, have adjudicated against the responsible defendant. When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then capriciously cut off a portion of that loaf as it hands it to the plaintiff."

The late Chief Justice CHARLES ALVIN JONES, in the case of *Takac v. Bamford*, 370 Pa. 389, said: "The grant or refusal of a new trial for inadequacy of the verdict is a matter for the sound discretion of the trial court whose action will not be reversed on appeal except for a clear abuse of discretion such as where a new trial is refused when the verdict is so unreasonably low as to present a clear case of injustice."

The decision of the Majority in this case presents "a clear case of injustice." The Majority Opinion does not attempt to justify the amount of the verdict. It says that the verdict was a compromise verdict and that a compromise verdict is sustainable when the verdict is "substantial." Was the verdict here substantial? If one finds a wallet containing $3500 on a lonely country road and cannot ascertain who had lost it, the finder, could, with reason and logic, say that he had come into possession of a "substantial sum." But if, while on that road, he has been run over by a motorist, his knee joint demolished so that this anatomical pivot can no longer function normally, if, from then on he suffers excruciating headaches, his hearing is impaired and he has to undergo further painful sur-

gery with the insertion of a metallic screw in the bone, he would feel insulted if he were offered $3500 in recompense for his agony and economic loss. And properly so, especially if the motorist had previously offered him *$10,000* as happened here before the trial!

But the Majority argues in effect that the plaintiff should be satisfied with what he got because he really shouldn't receive anything since he was at fault. But who says he was at fault? Not the fact-finders who heard the evidence, saw the witnesses and on their oaths concluded that Black was in no way responsible for the accident.

The facts are that the plaintiff, as he was about to enter his car to drive to his home, noted that the left rear tire was half flat. He calculated he could get to a service station less than a mile away before the tire deflated completely. However, after traveling a short distance, he saw that he had been too optimistic and that the grieving tire had wholly collapsed. He pulled over to the side of the road, as far as he could go, there being snow piled on the banks of the highway. However, he and a witness testified that he was actually completely off the road. His parking lights were on, and he bent over to examine the tire. It was a cold December night, and he straightened up momentarily to warm his hands. While engaged in this self-heating operation, the defendant's car suddenly was upon him, and he later regained consciousness in a hospital.

The defendant admittedly was speeding at about 45 miles per hour. He had clear visibility ahead of him for 350 feet. He could not have failed to see the plaintiff silhouetted in his headlights and no one contends that he did not. And no one contends that he was not responsible for the accident.

But it is contended that the plaintiff also was at fault. How? A State police officer who investigated the circumstances preceding and surrounding the accident said that the plaintiff could have changed his tire at the time he first got into the car. But what has that got to do with the accident? This is like charging the plaintiff with contributory negligence because he decided to travel by car and not walk since his home was only six miles away.

What happened before arrival at the point of collision was no more relevant to the question of negligence and contributory negligence than what happened when Black first learned to drive.

Even if the plaintiff had used bad judgment in driving with a whining tire, this was not the proximate cause of the accident. The plaintiff felt that the tire was not so flat that he couldn't get to the gasoline station less than a mile away. The motion picture scenario in this case does not begin until Black stopped his car to fix the tire. If he drove the car completely off the highway, as he and a witness testified, he had reason to believe that no motorist would run into him.

The Majority Opinion says that the police officer testified that when he got to the scene of the collision the plaintiff's car was partly on the paved portion of the highway. The defendant testified that the plaintiff's car was one foot on the hard-surfaced highway. But this conflict in testimony was resolved by the jury which found the defendant negligent and the plaintiff nonnegligent.

The Majority Opinion narrates what the defendant testified to, namely, that when the defendant's car was close to the plaintiff, the plaintiff jumped up in front of the defendant's car. If the accident actually happened in this manner, this would have been the clearest case of contributory negligence and the defendant

would have been entitled to judgment n.o.v., but the trial judge refused n.o.v., explaining: "It is elementary that in passing upon a motion for a judgment n.o.v. that the testimony must be read in the light most favorable to the verdict winner. All conflicts therein must be resolved in his favor and he must be given the benefit of all facts and inferences from facts reasonably deductible from the evidence. With this in mind, we summarily dismiss defendant's motion for judgment n.o.v.: Ason v. Leonhart, 402 Pa. 312 (1960). If we consider all of the testimony in the light most favorable to the plaintiff, he is entitled to a verdict."

What caused the jury to fail to award to the plaintiff the full amount to which obviously he was entitled? A reading of the record reveals that there was a woman in the case. Not a real woman, but there was enough of a flutter of skirts to confuse the jury. Clarence Swindell testified that after the accident he found the plaintiff lying on the road. Defendant's counsel asked him: "Q. Did you see a woman there, by any chance, any woman there that evening? A. Not that I recall, I don't."

No one had said anything about a woman up to this point. There was nothing to suggest female influence of any kind. Defendant's counsel was not satisfied after getting a negative reply from Swindell as to the presence of a woman. He was determined to get sex into the case, as there seems to be a determination to get it into every possible phase of life today. So, when Clifton Foster, who had been a passenger with Swindell, testified, defendant's counsel swept the femme fatale into the case again. "Q. Did you see any woman there at the scene? A. No, Sir, I didn't."

This interrogation, wholly gratuitous, wholly unjustified, suggested to the jury that Robert Black had been engaged in some kind of immorality, that he had

not been true to his wife. The judge should have struck out this wholly prejudicial questioning and lectured the lawyer for employing improper tactics. Instead, the judge did nothing and, in his opinion denying a new trial, said that the reference to the woman was of no consequence. It is a grave mistake to assume that the mention of a woman in any given circumstance can ever be of no consequence.

In the case of *Bedillion v. Frazee,* 408 Pa. 281, we affirmed the granting of a new trial on the basis of an inadequate verdict because defendant's counsel had intimated, through improper questioning, that the plaintiff might have been on an immoral errand when she was injured. We said: "It is evident from the record, and the lower Court so found, that the inadequate verdict was due to the fact that defendant's counsel attempted to portray Mrs. Bedillion as a person of loose morals. The jury was led to believe that if on the night of the accident Mrs. Bedillion was bound on a mission which did not appeal to the jury she was not entitled to the damages which might otherwise be due her. Of course, it goes without saying that in a personal injuries case, the jury has no jurisdiction over the morals of the parties except, of course, insofar as they relate to truthfulness and credibility. It wouldn't matter what Mrs. Bedillion's intended destination was that night, no one had the right to throw her against a concrete abutment. Even if she were going to a bull fight strictly prohibited by law no motorist could injure her and then be immune from responsibility for his tort."

Another reason probably contributing to the niggardly verdict was questioning by the trial judge which suggested that a doctor called by the plaintiff was not as competent as he might have been. After Dr. Harry H. Negley, Jr., Huntingdon County Coroner

and a medical witness for the plaintiff, had stated his qualifications, the judge asked him the following: "The Court: Are you a member of the American College of Surgeons? The Witness: No, the International College of Surgeons. The Court: The American College of Surgeons is the most respected and qualified in the United States, is it not? The Witness: Not necessarily so, Your Honor, although it is well recognized. The Court: Isn't it true that most specialists are members of the American College of Surgeons? The Witness: If I might digress a minute, because you have led me afield—Mr. I. Newton Taylor: Just a minute, Doctor."

Very few jurors would know the relative merits of the American College of Surgeons as against the International College of Surgeons, but the judge's queries suggested that Dr. Negley was not a very good doctor since he was not a member of the American College of Surgeons. The judge later instructed the jury to disregard his references to the two surgeon associations but by this time the horse was out of the barn and the bear was out of the tree. By this time it can be doubted if any member of that jury would have wanted Dr. Negley to operate on a stray caterwauling cat.

The trial judge allowed two wholly extraneous factors to enter into the case to distract the jury enough to allow them to believe that it was within their authority to reduce, as a matter of punitive determination, the amount of the verdict the plaintiff's injuries entitled him to. Obviously, this kind of a determination is contrary to the most elementary appreciation of a jury's duties and responsibilities. It is my view that law, justice and elementary fair play dictate a new trial in this case, without reference to phantom roadside women, stray cats and comparative negligence which does not exist in Pennsylvania law.