**Thelma J. LAW, Administratrix of the Estate of William C. Yaggi, Deceased, Appellant,**

v.

**John CONVERSE, a minor, by his guardian, James Converse.**

No. 17930.

United States Court of Appeals Third Circuit.

Argued Oct. 21, 1969.

Decided Nov. 25, 1969.

he turned to Sickel and said, "Now, I suppose I can bill you for this machine." Sickel replied, "Certainly."

John P. Campana, Campana & Campana, Williamsport, Pa. (Michael J. Casale, Williamsport, Pa., on the brief), for appellant.

John C. Gault, Candor, Youngman, Gibson & Gault, Williamsport, Pa., for appellee.

Before KALODNER, STALEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

In this wrongful death and survival action, plaintiff, the administratrix of the estate of a decedent who was killed in an automobile accident, seeks on two grounds to overthrow the jury's verdict against her. Both contentions have a seeming logic but are based on an ingenuous literalness which requires their rejection.

I.

Plaintiff's counsel said to the jury in the course of his reply summation: "The Court will tell you that negligence on the part of the plaintiff, no matter how slight, will bar recovery. However, you, as jurors, have a right to compromise—." On defendant's objection, a sidebar discussion followed, in the course of which plaintiff's counsel contended that he should be permitted to tell the jurors that although the rule of law in Pennsylvania was that any negligence by the plaintiff, however slight, bars recovery, they nevertheless had a right despite this rule to award a compromise verdict. The trial judge refused to permit this and later instructed the jury on the Pennsylvania law by which contributory negligence, however slight, bars a plaintiff's recovery.[1]

In the course of its deliberations, the jury sent a note to the court stating: "Certain members of the jury feel that with all the evidence presented we can not give a verdict either way. We feel that both parties are negligent but can not shoulder either party with full guilt." The record does not disclose whether the trial judge made any comment on this note. In any event, the jury continued its deliberations and some time later returned with a unanimous verdict for the defendant, on which judgment was entered. Plaintiff moved for a new trial, assigning as the sole ground the trial judge's refusal to permit counsel's argument to the jury regarding compromise verdicts.

While the motion for new trial was pending our decisions in McSparran v. Weist, 402 F.2d 867 (3 Cir.1968) and Esposito v. Emery, 402 F.2d 878 (3 Cir. 1968) were announced. Plaintiff thereupon filed a motion to dismiss the action on the ground that her appointment as administratrix was solely to "manufacture" a diverse citizenship for the pur-

1. Crane v. Neal, 389 Pa. 329, 132 A.2d 675 (1957). See Schnars v. Union R. Co., 410 Pa. 538, 189 A.2d 884 (1963); Thompson v. Pennsylvania Power Co., 402 F.2d 88 (3 Cir. 1968).

pose of bringing the action in the federal court and that the pending case, therefore, should be dismissed for want of jurisdiction.

The district court denied both motions and from its order plaintiff has taken this appeal.

## II.

Plaintiff would have us ignore the jury's verdict and the judgment which decided the wrongful death and survival claims against her on the merits, and thus afford her the opportunity to try afresh in the state courts the survival claim which is not barred by the statute of limitations.[2]   To justify this disregard of the judgment against her on the merits she points to a phrase in our language in *McSparran* dealing with its retrospective effect.   We there declared that the new rule barring "manufactured" diversity was to be generally prospective, saying:

"We recognize that many actions are now pending in the courts of this circuit in reliance on our earlier decisions.   In many of these actions the statute of limitations may already bar the institution of new suits in the state courts, although in some of them protective state court actions may have been filed.   To apply the rule we have here announced to all pending and future actions indiscriminately would work great hardship on those who have relied on our prior recognition of artificial diversity jurisdiction. It is therefore appropriate to declare the new rule to be prospective."   (402 F.2d at 876–877.)

We went on to permit a limited retrospective application of the rule, saying:

"In cases involving causes of action which arose prior to [the date of the filing of our opinion], including cases now pending, a district court shall apply the new rule against artificially created diversity, either on motion of a party or sua sponte, if it is conceded

by the parties or the court finds as a fact that diversity was artificially created, but only where the court finds that in the circumstances of the particular case there is ample time and opportunity for the plaintiff to institute a new action in the state court and that no unreasonable burden will be imposed on the plaintiff by the dismissal of the federal action."   (402 F.2d at 877.)

This language permits retrospective application of *McSparran* in those cases in which the court finds that the plaintiff may still institute a new action in the state court and that "no unreasonable burden will be imposed on the plaintiff by the dismissal of the federal action."   The argument therefore is made that the district court was bound to dismiss the action because plaintiff thereby will be benefited rather than injured, regardless of the effect on the defendant or on the administration of justice.

It is true indeed that plaintiff would benefit if the jury's decision absolving defendant of liability were cast aside and plaintiff were now afforded the chance of another trial, even if only on the survival claim.   But to restrict the inquiry to prejudice against the plaintiff would distort by a one-sided view the principle to which *McSparran* gave expression.   *McSparran* and *Esposito* alike dealt with our unwillingness to permit the new rule to be applied retrospectively in circumstances which would make it seriously unjust or inequitable. In both cases, the problem of the statute of limitations, which adversely affects only the plaintiff, was acutely focused before us.   In *McSparran*, where the statute of limitations was soon to expire and no other equitable considerations were involved, we pointed out that there was still time to bring a new suit in the state court and affirmed the judgment of dismissal.   In *Esposito*, where the statute had already run, we declared that "it would be harsh to apply our new

2.   After the statute had expired on the wrongful death claim, plaintiff filed a
timely action in the state court on the survival claim.

rule retrospectively to a case such as this, in which the plaintiff's rights would be lost because the statute of limitations bars the institution of a new suit in the state court. We therefore have considered the merits of the case." (402 F.2d at 880.) Our reference to hardship and burden, therefore, was but illustrative and was not a definitive limitation of the cases of hardship or burden which would make seriously unjust or inequitable the retrospective application of the new rule of *McSparran*. While our prospective decision on jurisdiction necessarily was absolute, the determination of the extent to which it should be applied retrospectively required, as an equal necessity, a consideration of the circumstances of the particular case, to which an individual, equitable judgment was to be applied.

■ *McSparran*, therefore, may not be given the limited reading that its retrospective application is to be judged solely by the test whether the plaintiff will suffer an unreasonable burden or hardship from the dismissal of the federal action. Usually, of course, it is the plaintiff who resists dismissal of the action he has chosen to bring in the federal court, and the question of unreasonable burden or hardship therefore will usually be focused on him. But in its ultimate scope the retrospective application of *McSparran* must be limited to cases in which no serious hardship or burden will be imposed on either the plaintiff or defendant, or on the administration of justice. Our consideration in *McSparran* of the question of an undue burden on a plaintiff does not mean that dismissal is proper in an unusual case in which a defendant, who normally gains from the dismissal of an action

for want of jurisdiction, will instead be deprived of a decision already reached on the merits in his favor. Indeed, in *McSparran* we were dealing with cases still awaiting trial in the federal courts. Far removed from such cases is one like this, which has already been tried and decided on the merits, even though at the time dismissal was sought the motion for new trial was pending and the possibility of appeal had not yet been exhausted.

■ We conclude, therefore, that it would have been improper for the district court to destroy a fully effectuated adjudicative process by a retrospective application of the new rule of *McSparran*, a rule which does not touch the merits yielded by the adjudicative process. The district court rightly denied plaintiff's motion to dismiss her action after she had tried and lost her claims before the jury.

### III.

Plaintiff's counsel earnestly contends that it was error to forbid him to inform the jury of its right to render a compromise verdict even if it found the decedent contributorily negligent. To justify this claim plaintiff's counsel points to the Pennsylvania decisions which have sustained compromise verdicts.[3] From this he argues that a jury has a right to reach a compromise verdict and therefore may be told this as a principle of law which is relevant to guide it in its deliberations.

A fundamental misapprehension underlies this argument. The Pennsylvania decisions approving compromise verdicts have dealt with cases where the trial court refused to award a new trial on plaintiff's claim of inadequacy of the

3. Black v. Ritchey, 432 Pa. 366, 248 A.2d 771 (1966); Elza v. Chovan, 396 Pa. 112, 152 A.2d 238 (1959); Karcesky v. Laria, 382 Pa. 227, 114 A.2d 150 (1955); Patterson v. Palley Manufacturing Co., 360 Pa. 259, 61 A.2d 861 (1948); Carpenelli v. Scranton Bus Co., 350 Pa. 184, 38 A.2d 44 (1944); Rhoades v. Wolf, 207 Pa.Super. 104, 215 A.2d 332 (1965); Jackson v. Capello, 201 Pa.Super. 91, 191 A.2d 903 (1963); Hilscher v. Ickinger, 194 Pa.Super. 237, 166 A.2d 678 (1960); Padula v. Godshalk, 192 Pa.Super. 618, 161 A.2d 919 (1960); Simpkins v. Richey, 192 Pa.Super. 46, 159 A.2d 17 (1960); Ewing v. Marsh, 174 Pa.Super. 589, 101 A.2d 391 (1953).

See generally, Note, Jury Compromise in Pennsylvania Negligence Actions, 109 U.Pa.L.Rev. 732 (1961).

verdict.[4] Such verdicts were rendered by a jury which received correct instructions from the court on the Pennsylvania law of contributory negligence. In sustaining such action by the trial court in the leading case of Carpenelli v. Scranton Bus Co., 350 Pa. 184, 188, 38 A.2d 44, 46 (1944), Mr. Justice Horace Stern first emphasized the discretion of the trial court in the grant of a new trial, and its even broader discretion in the refusal of a new trial for inadequacy of the verdict. He then went on to say:

> "[W]hen the evidence is equally divided in weight, or, a fortiori, when the preponderance of testimony is clearly with the defendant and the verdict rendered for the plaintiff, while small, is substantial, the problem becomes one of an entirely different nature [from the cases where the verdict is claimed to be excessive, or where liability is admitted], for in such event it can no more reasonably be said that the plaintiff recovered too little than that he should not have recovered at all; therefore, in such a case, it is just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff."

■ The Pennsylvania courts, therefore, have not sustained compromise verdicts because contributory negligence no longer bars a plaintiff from recovery, but rather because the verdict, even if small, was substantial and plaintiff in the circumstances of the case had no reason to complain.[5] The cases on compromise verdicts cannot have been intended to establish by indirection the doctrine of comparative negligence which is the antithesis of Pennsylvania's rule of contributory negligence.[6] Such verdicts have been upheld only "when they ·have been substantial and where the evidence was conflicting or was not clear on the question of liability or of plaintiff's contributory negligence."[7] If the evidence is clear and free from doubt, or if the verdict is not substantial, a compromise verdict will be set aside.[8]

■ The manner in which a compromise verdict rendered by a jury is to be dealt with by the court on a post-trial motion is quite different from the rule of law which is to guide the jury in arriving at its verdict. For a trial judge to exercise his discretion to let a small but substantial verdict stand, rather than award a new trial on the ground of inadequacy, is far different from an instruction to the jury that it has court-approved authority to disregard the law of Pennsylvania in arriving at its verdict and to award damages to one who under the law is not entitled to recover. In harmony with the principle that the question of a compromise verdict is not to be injected into the jury's deliberations is the early case of Boden v. Irwin, 92 Pa. 345 (1880), which held it error for a judge to charge the jury that the court would not set aside its verdict even if the jury announced a compromise verdict. Mr. Justice Paxson there

---

4. See the cases cited *supra*, n. 3. In Elza v. Chovan, the Pennsylvania Supreme Court affirmed the Superior Court's reversal of the trial court's grant of a new trial for inadequacy of a verdict. See also Jackson v. Capello; Hilscher v. Ickinger.

5. Carpenelli v. Scranton Bus Co., 350 Pa. 184, 190, 38 A.2d 44, 47 (1944).

6. Black v. Ritchey, 432 Pa. 366, 248 A.2d 771 (1966); Karcesky v. Laria, 382 Pa. 227, 114 A.2d 150 (1955).

7. Black v. Ritchey, 432 Pa. 366, 369–370, 248 A.2d 771, 773 (1966).

8. See Hose v. Hake, 412 Pa. 10, 192 A.2d 339 (1963); Walbert v. Farina, 411 Pa. 400, 192 A.2d 404 (1963); Krusinsky v. Chioda, 394 Pa. 90, 145 A.2d 681 (1958); Sharpe v. Steel, 205 Pa.Super. 95, 208 A.2d 43 (1965); Salemmo v. Dolan, 192 Pa.Super. 51, 159 A.2d 253 (1960); Cason v. Smith, 188 Pa.Super. 376, 146 A.2d 634 (1958). See also Phelps v. Paul L. Britton, Inc., 412 Pa. 55, 192 A.2d 689 (1963); Gagliano v. Ditzler, 213 Pa. Super. 238, 247 A.2d 632 (1968); Rutter v. Morris, 212 Pa.Super. 466, 243 A.2d 140 (1968).

 

said: "Juries are prone enough to disregard the evidence, and set up their own standard of right between the parties without a permission to do so from the court. The instruction complained of, left the jury to do as they pleased without regard to the evidence." (p. 346.) Conversely, a recent case has indicated that it was error, after the jury had returned with an inconsistent verdict that both parties were negligent but the jury would award the amount of the doctor's bill to the plaintiff, to instruct the jury that it should not compromise on any verdict. Robinson v. Brown, 195 Pa.Super. 384, 171 A.2d 865 (1961).[9]

The error which plaintiff makes is in the inversion of the post-trial acceptance of the verdict into an appropriate guide to the jury in arriving at its decision. Experience has shown that there are many elements which creep into a jury's deliberations contrary to the principles which govern them, but which will not always require that their verdict be set aside. It is true that juries sometimes disobey the court's instructions, or speculate on insurance coverage, or are swayed by sympathy or prejudice. The realistic acknowledgment that this is true does not, however, justify exalting the jury's wayward action into a principle of law which is to be expounded to it in advance of its deliberations.

Some of the imperfections in the institution of trial by jury have even been excused as virtues because the jurors apply a worldly and practical interpretation to the law laid down for their guidance and so ameliorate the strictness of legal doctrine. But there can be no justifiable claim that because the disregard of the rules which bind a jury sometimes expresses a community sense of justice, a party therefore has the right to declare to a jury that it is its legal function to flout the law and disregard the judge. Instead of ameliorating the strictness of a rule of law in exceptional, appealing circumstances, the rule of law would be undermined and chaos established as the guiding principle.

What counsel sought to do here was to instruct the jury that despite the charge of the court that a plaintiff's contributory negligence, however slight, bars his recovery, it could apply the contrary principle of comparative negligence. Such a drastic change in doctrine is for the Pennsylvania courts or its legislature to announce and not for counsel to insinuate into the deliberations of the jury. The district court properly rejected such an invasion of the trial judge's function and such a disregard of the established law of Pennsylvania.

The order of the district court denying the motion for new trial and the motion to dismiss the action will be affirmed.

---

9. There was other ground for reversal and award of a new trial.