Joseph **RENNER**, Administrator of the
Estate of Carol Irene Vitcov

v.

Edward **VITCOV** and Joan S. Vitcov.

Joseph **RENNER**, Administrator of the
Estate of Michael Frank Vitcov

v.

Edward **VITCOV** and Joan S. Vitcov.

Nos. 68–1381, 68–1382.

United States District Court,
E. D. Pennsylvania.

March 13, 1972.

Jordon R. Pitock, Philadelphia, Pa., for plaintiffs.

Robert Cottam, Reading, Pa., for defendants.

### MEMORANDUM

TROUTMAN, District Judge.

These diversity actions arise out of the multiple drowning deaths of minor plaintiffs, Michael Frank and Carol Irene Vitcov, on July 4, 1967. The deceased minors and their parents resided in Philadelphia, Pennsylvania, at the time of the deaths. The defendants reside in Berks County, Pennsylvania, where the drownings occurred. On April 16, 1968, Joseph Renner, a resident of New Jersey, was appointed administrator of the estates of both children and, thereafter, filed these actions under the Pennsylvania Wrongful Death and Survival Acts, which were later consolidated. Defendants have moved to dismiss the complaints for lack of jurisdiction, on the ground that the administrator was appointed solely for the purpose of manufacturing diversity.

Title 28 U.S.C. § 1359 provides:

"A district court shall not have jurisdiction of a civil action in which a party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

In McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S. Ct. 1739, 23 L.Ed.2d 217 (1969), it was held that Section 1359 bars federal court jurisdiction in a suit by a personal representative where the purpose of the appointment of the representative was to create diversity jurisdiction. The Circuit Court further held that whether in an individual case diversity jurisdiction is manufactured is a question of fact to be determined by the District Court, 402 F.2d at 875, and that the burden of proving the facts to sustain diversity jurisdiction rests with the plaintiff. 402 F.2d at 875. The factors which the District Court may consider in determining whether diversity has been artificially created were enumerated in Groh v. Brooks, 421 F.2d 589 (3d Cir. 1970) at page 595:

" * * * the identity of the representative and his relationship to the party represented; the scope of the representative's powers and duties; any special capacity or experience which the representative may possess with respect to the purpose of his appointment; whether there exists a non-diverse party, such as a parent in a suit for injuries to a child, who might more normally be expected to represent the interests involved; whether

those seeking the appointment of the representative express any particular reasons for selecting an out-of-state person; and whether, apart from the appointment of an out-of-state representative, the suit is one wholly local in nature."

■ The facts of the instant case, as related to the criteria set forth in Groh v. Brooks, supra, clearly establish that this is a case of manufactured diversity: (1) The relationship between the administrator and the deceased plaintiffs was based solely on a business relationship with their father. The administrator and the children's father had known each other for approximately two or three years prior to the children's deaths. The administrator, as a salesman, and the father, as a purchasing agent, met approximately once a week on business. They saw each other socially at their respective homes, but this association was not close, occurring only approximately five or six times. Additionally, the only time the administrator had ever met the deceased children was while visiting at their father's home. Consequently, the relation was centered primarily around business with the father; there was no familial relation; and the social relations between the two families was infrequent. (2) The exercise of the powers and duties conferred upon Renner has been de minimis. In the three years since his appointment, he has done nothing except file these actions. Additionally, he indicated that he has no idea what the assets of the estates were; he has not filed any inventory or statement of debts and deductions; he has paid no bills in the estates and, finally, he does not know the amount of the funeral expenses. This complete lack of activity by the administrator over the three-year period indicates that he has no interest in the administration of these estates and is acting only as a nominal party to create a diversity. (3) As to any special capacity or experience, the administrator, as a salesman, admitted that he has never been an executor or administrator before, he has never been a party

to a personal injury suit, he has had no experience in personal injury litigation, and he has little knowledge of legal proceedings. (4) The father, as a Pennsylvania resident, could normally have been expected to represent the interests of his children. There is no indication that the father would not have been a competent administrator or that Renner would prove to be more competent. (5) The reasons cited by plaintiff for the appointment of Renner as administrator were that he and the father were close business associates and confidants and that the family was extraordinarily upset over the incident. As previously stated, although there is no suggestion that Renner is not a competent businessman, he has little experience or knowledge in the field of estate administration. Furthermore, in Hoffman v. Lenyo, 433 F.2d 657, 658 (3d Cir. 1970), the court indicated that the fact that the parents were emotionally distraught did not justify the appointment of an out-of-state administrator, especially where, as here, the appointment took place a substantial number of months after the deaths. (6) Finally, this suit is wholly local in nature—the deceased minors and defendants being Pennsylvania residents and the accident having occurred in Pennsylvania. An analysis of these factors taken as a whole has led us to the inescapable conclusion that the sole purpose of Renner's appointment as administrator was to manufacture diversity.

■ We have noted, however, that the instant suits were filed on June 28, 1968 and, therefore, the question arises as to whether *McSparran* should be applied retroactively under the facts of these cases. In Groh v. Brooks, supra, it was held that the *McSparran* rule may be applied retroactively in a manufactured diversity case if the court finds that:

"(1) the plaintiff has 'ample time and opportunity' to bring an action in the state court, and

(2) dismissal would not impose an 'unreasonable burden' on either party

or on the administration of justice. Law v. Converse [419 F.2d 38 (3d Cir. 1969)]; McSparran v. Weist, 402 F.2d at 877." 421 F.2d at 592.

In these cases, defendants are willing to waive the statute of limitations as a defense to any state court action. This will provide plaintiffs ample time and opportunity to bring this action in the appropriate state court. Further, this dismissal will not impose an unreasonable burden on either of the parties or on the administration of justice, since the only discovery which has taken place thus far has been for the purpose of these motions.

Accordingly, defendants' motion to dismiss the complaints for lack of jurisdiction will be granted, provided that defendants, as stated in the motions to dismiss, waive the statute of limitations for a period of ninety (90) days following the date of the filing of this opinion.