J-A03045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RENAE HAMM AND ALVIN HAMM | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| NATHAN HANDWERK AND GLEN HANDWERK | |
| Appellees | No. 1109 EDA 2015 |

Appeal from the Judgment Entered April 14, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2012-C-3314

BEFORE:  GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 08, 2016**

Appellants, Renae Hamm and Alvin Hamm, appeal from the judgment entered in the Lehigh County Court of Common Pleas, following a jury trial on Appellants' personal injury claims.  We affirm.

The relevant facts and procedural history of this case are as follows. At about 4:00 a.m. on August 15, 2010, Appellee Nathan Handwerk was driving while intoxicated when he lost control of his vehicle and struck Appellants' home.  Police arrived shortly after the accident and administered field sobriety tests before arresting Nathan Handwerk.  None of the officers who responded to the scene reported that any person sustained injuries as a result of the accident.  The trial court continued:

> Mrs. Hamm was fifty years old at the time of the accident.
> She was employed, as she had been for many years, as a

cafeteria worker in a local school. Her job required repetitive standing on her feet, bending and lifting up to forty pounds. She earned $20,212.22 in 2010.

Although Mrs. Hamm professed not to have any significant back issues before the accident, she had an MRI in 2002 that revealed a disc bulge at the L4—L5 level and some age-related degenerative changes, and on May 11, 2010, three months before the accident, she reported to her employer that she had strained her back by bending and lifting a case of lettuce.

Mrs. Hamm said the accident occurred at about 4:00 a.m. on August 15, 2010. She said she was sleeping in bed when [the] vehicle struck her house with such force that it threw her out of the bed and "next thing I know, I'm hitting the cedar chest and hitting the floor." She thought "the gas station exploded[.]" According to Mr. Hamm, he was awake at the time of the accident sitting in a back room of the house having coffee. Although he is hard of hearing, he neither heard nor, more importantly, felt the impact of the house being struck by [the] vehicle.

In any event, Mr. Hamm transported Mrs. Hamm to the St. Luke's Hospital around 11:00 a.m. She did not complain of radicular symptoms. There was no history of head or neck injury. There was no evidence of bruising, only some tenderness in the muscles that run up and down her back, muscle spasms of the lower back and a contusion on her right forearm. She was discharged with medications.

She returned to work without any restrictions after only two days of rest. She saw her family physician, Dr. Slompak, on October 23, and November 26, 2010, on complaint of pain in her back and thighs. X-rays of her [lumbosacral] spine showed degenerative disc and facet disease of the lumbar spine. She underwent an MRI on December 2, 2010, that revealed disc herniation at T11—T12 and L2—L3, and the previously noted pre-existing disc bulge at L4—L5 and/or L3—L4 and some aggravation of the age-related degenerative changes.

She went to Florida when school closed for the Christmas holidays to visit her 81 year-old, ailing and infirm parents.

Although she had intended to return to work after the holidays, when school resumed, she remained in Florida under an emergency family leave from work and continued to care for her parents until early March. Within two weeks of her return from Florida, Mrs. Hamm claimed to have suffered a work-related injury to her back on March 28, 2011. When she saw a physician on April 13, 2011, to describe the March 28, 2011 work-related accident, she failed to mention the August 15, 2010 accident. She [later] claimed to have suffered another work-related injury to her back on September 21, 2011.

Although Mrs. Hamm testified she was pain-ridden and felt needy and useless after the August 15, 2010 accident, she managed to care for her elderly parents while in Florida without incident or complaint. She received no treatment or physical therapy after the August 15, 2010 accident, even after the December MRI and while she was caring for her parents in Florida, until after the March 28, 2011 work-related accident. When she returned to work in March 2011, she did so without any restrictions even though her work consisted of repetitive standing, bending and lifting. It was only after the March 28, 2011 work-related accident that she began treatment.

Mrs. Hamm's expert witness, Dr. Weiss, evaluated her on May 10, 2012, when she was 52 years old and weighed 240 pounds. At that time, Mrs. Hamm reported that between the August 15, 2010 and March 28, 2011 accidents she was able to perform without difficulty all 23 of the activities of daily living listed by Dr. Weiss. She had no restrictions on her activities of daily living. Dr. Weiss concluded that following the August 15, 2010 accident, Mrs. Hamm suffered a "permanent orthopedic impairment," the herniated discs at T11—T12 and L2—L3, but that those impairments did not manifest themselves until after the March 28, 2011 accident.

When [Nathan Handwerk's] IME doctor, Dr. Williams, evaluated Mrs. Hamm on September 16, 2013, she weighed 235 pounds. He concluded, as did Dr. Weiss, Mrs. Hamm suffered pre-existing degenerative disc and facet disease of the lumbar and thoracic spines and a lumbar sprain/strain as a result of the August 15, 2010 accident.

He characterized the sprain/strain injuries as "subjective…unless the sprain or strain is sufficient to severely tear tissues." Dr. Weiss also indicated it was his experience that "depend[ing] on the degree…most patients recover [from a sprain and strain] within three, perhaps six months at most." He also said it was his experience that patients with a sprain and strain continue to treat with a medical provider "[u]nless they have treated for so long they finally give up." As noted, Mrs. Hamm underwent no treatment between the August 15, 2010 and March 28, 2011 accidents. Furthermore, Dr. Williams concluded the injuries Mrs. Hamm sustained from the March and September 2011 work-related accidents were not caused by the August 15, 2010 accident.

(Trial Court Opinion, filed March 16, 2015, at 2-5) (internal citations omitted).

On January 3, 2013, Mrs. Hamm and her husband Mr. Hamm sued Nathan Handwerk and his father Glen Handwerk, who owned the vehicle involved in the crash, based on claims of negligence and loss of consortium. Prior to trial, the parties entered into a stipulation removing Glen Handwerk as a party in the case. The case proceeded to a jury trial on September 15, 2014. Based on an agreement between the parties' experts at trial, the court instructed the jury to find against Nathan Handwerk on causation, and to find Mrs. Hamm suffered a sprain and strain of her lower back and a symptomatic aggravation of her preexisting lumbar and thoracic degenerative disc disease as a result of the accident. The jury found Nathan Handwerk was reckless, and it awarded Mrs. Hamm $1,000.00 in compensatory damages and $10,000.00 in punitive damages. The jury awarded Mr. Hamm no damages for loss of consortium. The court molded

the verdict to reflect a judgment in favor of Mrs. Hamm for a total of $11,000.00.

On September 25, 2014, Appellants timely filed post-trial motions requesting a new trial. Nathan Handwerk also filed a post-trial motion requesting remittitur of the punitive damages verdict. The court denied both motions on March 16, 2015. Upon *praecipe* of Appellants, the court entered judgment on the verdict on April 14, 2015. Appellants timely filed a notice of appeal the same day. On April 22, 2015, the court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they timely complied on April 29, 2015.[1]

Appellants raise the following issues for our review:

> MUST THE ORDER DENYING APPELLANTS' NEW TRIAL
> MOTION BE REVERSED SINCE THE VERDICT OF $1,000.00
> WAS CLEARLY INADEQUATE AND AGAINST THE WEIGHT
> OF THE EVIDENCE, CONSIDERING THAT THE VERDICT
> DOES NOT EVEN COMPENSATE FOR RECOVERABLE
> MEDICAL EXPENSES OR WAGE LOSS LET ALONE PAIN AND
> SUFFERING, AND CONSIDERING THE ADMISSIONS OF
> DEFENSE ORTHOPEDIC EXPERT JOHN WILLIAMS, M.D.,
> THAT: A) [MRS. HAMM] SUFFERED A LUMBAR SPRAIN AND
> STRAIN AND SYMPTOMATIC EXACERBATION OF LUMBAR

---

[1] To the extent Appellants challenge on appeal the inadequacy of the jury's verdict regarding Mr. Hamm's claim for loss of consortium, Appellants waived that argument by failing to identify it clearly in their post-verdict motions or include it in their Rule 1925(b) concise statement. **See Majorsky v. Douglas**, 58 A.3d 1250 (Pa.Super. 2012), *appeal denied*, 620 Pa. 732, 70 A.3d 811 (2013) (reiterating general rule that issues not raised before trial court are waived and cannot be raised for first time on appeal, citing Pa.R.A.P. 302; likewise, issues absent from court-ordered Rule 1925(b) statement are waived for purposes of appellate review).

AND THORACIC DEGENERATIVE DISC DISEASE; B) IT WOULD REQUIRE AT LEAST 3-6 MONTHS TO RECOVER FROM THE LUMBAR SPRAIN AND STRAIN AND THERE IS A 25-30% CHANCE THAT THE INJURY MIGHT BE PERMANENT; C) [MRS. HAMM] IS DISABLED FROM RETURNING TO HER JOB AS A CAFETERIA WORKER; D) [MRS. HAMM'S] COMPLAINTS HAVE AN OBJECTIVE BASIS FROM THE MRIS AND X-RAYS; E) ALL OF [MRS. HAMM'S] TREATMENT HAS BEEN REASONABLE AND NECESSARY; F) [MRS. HAMM'S] CONDITION IS PERMANENT; G) **THE 8/15/2010 ACCIDENT CAUSED AT LEAST SOME OF [MRS. HAMM'S] PERMANENT DISABILITY (AND THEREFORE PERMANENT INJURY)**; AND H) IF SHE EXPERIENCE[D] RADIATING PAIN AND NUMBNESS PRIOR TO 03/28/11, THEN THE PRESSURE ON THE NERVE HAD TO PRE-EXIST HER FIRST WORK ACCIDENT?

MUST A NEW TRIAL BE GRANTED BECAUSE THE TRIAL COURT ERRED IN FAILING TO GIVE PENNSYLVANIA SUGGESTED STANDARD JURY INSTRUCTION 7.90 (OR EQUIVALENT CHARGE) ON OTHER CONTRIBUTING CAUSES?

MUST A NEW TRIAL BE GRANTED BECAUSE THE TRIAL COURT ERRED IN REFUSING TO GIVE [APPELLANTS'] SUPPLEMENTAL POINTS FOR CHARGE 1 & 2 REGARDING CAUSATION OF SUBSEQUENT INJURIES ARISING FROM HER IMPAIRED PHYSICAL CONDITION CAUSED BY THE AUGUST 15, 2010 ACCIDENT?

DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR BY FAILING TO PRECLUDE THE [DEFENSE] IME DOCTOR, JOHN WILLIAMS, M.D., FROM TESTIFYING CONCERNING HIS REVIEW OF MRI FILMS WHICH WERE NOT CONTAINED IN HIS REPORT AND WHICH HE GAINED ACCESS TO BY VIOLATING THE DISCOVERY RULES AND HIPPA RULES CONCERNING ACQUIRING PATIENT INFORMATION?

BECAUSE THE FOLLOWING ISSUES HAVE BEEN FAIRLY DECIDED: A) THAT [NATHAN HANDWERK] WAS NEGLIGENT AND THAT HIS NEGLIGENCE CAUSED [MRS. HAMM] HARM; B) THAT [NATHAN HANDWERK] WAS RECKLESS AND THAT HIS RECKLESSNESS CAUSED [MRS. HAMM] HARM; AND C) THAT [NATHAN HANDWERK'S]

CONDUCT WAS OUTRAGEOUS AND DESERVING OF PUNITIVE DAMAGES; SHOULD THE NEW TRIAL BE LIMITED TO DETERMINING THE FOLLOWING ISSUES: 1) THE AMOUNT OF COMPENSATORY DAMAGES TO BE AWARDED FOR THE NATURE AND EXTENT OF [APPELLANTS'] HARM RESULTING FROM [NATHAN HANDWERK'S] CONDUCT; AND 2) THE AMOUNT OF PUNITIVE DAMAGES TO BE AWARDED AS A RESULT OF [NATHAN HANDWERK'S] RECKLESS AND OUTRAGEOUS CONDUCT?

(Appellants' Brief at 3-4).

Appellants essentially argue they are entitled to a new trial because (a) Nathan Handwerk admitted liability for the accident; (b) Mrs. Hamm is permanently disabled and cannot resume her job as a cafeteria worker; (c) Nathan Handwerk's own defense expert conceded Mrs. Hamm suffered from a lumbar sprain and strain from the accident and cannot continue to work; (d) both parties' experts agreed that the August 15, 2010 accident contributed to Mrs. Hamm's ultimate disability; (e) Nathan Handwerk's expert admitted Mrs. Hamm's course of medical treatment was reasonable and necessary; (f) the trial court directed a verdict because both parties' experts agreed Mrs. Hamm suffered injuries from the accident; (g) the jury award of $1,000 in compensatory damages was inadequate and against the weight of the evidence; (h) given the directed verdict, the trial court should have instructed the jury that an intervening cause of harm such as Mrs. Hamm's subsequent work-related injuries would not relieve Nathan Handwerk of his responsibility for causing Mrs. Hamm's disability; (i) the court erred in refusing to give Appellants' proffered points for charge

regarding Mrs. Hamm's impaired physical condition caused by the accident; (j) the court should have precluded defense expert Dr. John Williams from testifying to MRI film results he allegedly obtained outside of discovery. Appellants contend they are entitled to a new trial on damages as a result of these errors. We disagree.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Edward D. Reibman, we conclude Appellants' issues merit no relief. The trial court's opinion fully discusses and properly disposes of Appellants' issues on appeal. (*See* Trial Court Opinion, filed March 16, 2015, at 5-12) (finding: **(1) & (5)** Mrs. Hamm had history of back issues prior to 8/15/10 accident; Mrs. Hamm's description of force of 8/15/10 collision was inconsistent with her husband's description of that force; Mrs. Hamm's injuries at time of hospital visit six hours later consisted of only muscle tenderness and spasms, and single contusion on her forearm; Mrs. Hamm's job required repetitive standing, bending, and lifting, but she returned to work full time after only two days without any restrictions; Mrs. Hamm cared for her elderly parents in Florida from end of December 2010 until March 2011, without injury or complaint; Mrs. Hamm did not seek treatment after 8/15/10 collision until after new work-related 3/28/11 injury; at treatment for 3/28/11 injury, Mrs. Hamm did not mention 8/15/10 accident; court instructed jury to find Mrs. Hamm suffered sprain/strain of her lower back as result of 8/15/10 that

aggravated pre-existing degenerative condition; Mrs. Hamm's injuries from 8/15/10 accident are wholly subjective and difficult to quantify; jury concluded $1,000.00 was appropriate amount of compensatory damages for Mrs. Hamm's 8/15/10 accident-related injuries; jury was free to evaluate Mrs. Hamm's credibility and compensate her for portion of injuries it attributed to 8/15/10 accident; Appellants rely on cases which are not dispositive here; jury awarded Mrs. Hamm punitive damages of $10,000.00; ratio between punitive damages award and compensatory damages award of 10:1 is just over single-digit range favored in case law; nevertheless, jury's verdict was reasonable and serves as both punishment and deterrent; rejection of jury's award would substitute court's judgment for that of jury; court declines to disturb jury's award of compensatory or punitive damages; **(2) & (3)** jury instruction 7.90 on other contributing causes is relevant to past injuries that contributed to plaintiff's injury in 8/15/10 accident; in such cases, tortfeasor accepts plaintiff as plaintiff existed at time of tortfeasor's negligent act; here, Mrs. Hamm sought to make Nathan Handwerk responsible for subsequent injuries she sustained from her subsequent work-related accidents on 3/28/11 and 9/21/11; Mrs. Hamm offered no evidence to demonstrate her work-related accidents were caused by injuries she sustained from 8/15/10 collision; Mrs. Hamm's subsequent injuries might have been exacerbated because of her compromised condition resulting from 8/15/10 incident, but she failed to present evidence demonstrating either

work-related injury was directly caused by injuries from 8/15/10 collision; it would have been inappropriate to instruct jury that Nathan Handwerk should be liable to Mrs. Hamm for her later, independent work-related injuries simply because her physical condition might have been weaker on dates of those later injuries; **(4)** Dr. Williams' testimony was limited to agreement with reports by radiologist, and his review of Mrs. Hamm's films was simply confirmation that Dr. Williams agreed with radiologist; thus, Dr. Williams' opinion was fully revealed to Appellants, and no new or potentially prejudicial conclusions were set forth or present prejudicial surprise; regarding Dr. Williams' access to MRI films, Dr. Williams had access to review Mrs. Hamm's records based on her consent; Dr. Williams was unable to read copies of records produced through discovery due to poor copying of records, so he reviewed same records he had consent to review through different medium of Lehigh Valley Hospital's computer system; Dr. Williams did not exceed scope of Mrs. Hamm's consent).  The record supports the court's decision on Appellants' properly preserved claims.  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2016

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION


Renae Hamm, Alvin Hamm,                    :
                                           :
          Plaintiffs,                      :        No. 2012-C-3314
                                           :        (Hon. Edward D. Reibman)
          v.                               :
                                           :
Nathan Handwerk, Glen Handwerk,            :
                                           :
          Defendants.                      :


## OPINION

   *                      *                      *


APPEARANCES:

     Michael A. Snover, Esquire
          on behalf of Plaintiffs Renae Hamm and Alvin Hamm

     Jill M. Moffitt, Esquire
     FORRY ULLMAN
          on behalf of Defendants Nathan Handwerk and Glen Handwerk


   *                      *                      *


EDWARD D. REIBMAN, J.


     During the early morning hours of August 15, 2010, Defendant, Nathan Handwerk,

("Defendant") while driving intoxicated, lost control of his vehicle, which then left the roadway

and struck Plaintiffs' house. Plaintiff Renae Hamm ("Mrs. Hamm") claimed she received

1

serious injuries when the force of the accident caused her to be thrown from her bed, and that but for those injuries she would not have suffered subsequent work injuries that left her permanently disabled. Her husband, Alvin Hamm ("Mr. Hamm"), claimed damages as a result of the loss of her consortium.

A trial by jury was held from September 15 through 19, 2014. The jury was instructed to find Defendant was negligent and, based upon statements made by the parties' expert witnesses, that Mrs. Hamm suffered a sprain and strain of her lower back and a symptomatic aggravation of her preexisting lumbar and thoracic degenerative disc disease as a result of the accident. The jury found Defendant was reckless, and it awarded Mrs. Hamm compensatory damages in the amount of $1,000.00 and punitive damages in the amount of $10,000.00. It awarded no damages to Mr. Hamm.

Before the court are Plaintiffs' post-trial motions seeking (1) a new trial on the bases the verdict was inadequate and against the weight of the evidence, and the court erred in (a) refusing to give requested charges to the jury with respect to contributing causes and causation and (b) failing to preclude Defendant's IME doctor from testifying concerning his review of MRI films that were not referenced in his report and which he viewed in violation of rules of discovery and patient privacy, and (2) remitter of the punitive damage verdict.[1]

Mrs. Hamm was fifty years old at the time of the accident. She was employed, as she had been for many years, as a cafeteria worker in a local school. Her job required repetitive standing on her feet, bending and lifting up to forty pounds. She earned $20,212.22 in 2010.

---

[1] In their post-trial motions, Plaintiffs also claimed the court erred in denying their motion for a mistrial after Defendant argued in closing the jury should infer adversely to the Plaintiffs the fact Plaintiffs did not call Mrs. Hamm's treating physician to testify, and Defendant claimed the court erred in not removing Defendant Glen Handwerk from the caption of the case. However, those claims were abandoned by counsel at oral argument.

Although Mrs. Hamm professed not to have any significant back issues before the accident, she had an MRI in 2002 that revealed a disc bulge at the L4-L5 level and some age-related degenerative changes, and on May 11, 2010, three months before the accident, she reported to her employer that she had strained her back by bending and lifting a case of lettuce.

Mrs. Hamm said the accident occurred at about 4:00 a.m. on August 15, 2010. She said she was sleeping in bed when Defendant's vehicle struck her house with such force that it threw her out of the bed and the "next thing I know, I'm hitting the cedar chest and hitting the floor." She thought "the gas station exploded". N.T., Vol. II, pp. 59:14-60:1, 122:24-123:1. According to Mr. Hamm, he was awake at the time of the accident sitting in a back room of the house having coffee. Although he is hard of hearing, he neither heard nor, more importantly, felt the impact of the house being struck by Defendant's vehicle.

In any event, Mr. Hamm transported Mrs. Hamm to the St. Luke's Hospital around 11:00 a.m. She did not complain of radicular symptoms. There was no history of head or neck injury. There was no evidence of bruising, only some tenderness in the muscles that run up and down her back, muscle spasms of the lower back and a contusion on her right forearm. She was discharged with medications.

She returned to work without any restrictions after only two days of rest. She saw her family physician, Dr. Slompak, on October 23, and November 26, 2010, on complaint of pain in her back and thighs. X-rays of her lumbrosacral spine showed degenerative disc and facet disease of the lumbar spine. She underwent an MRI on December 2, 2010, that revealed disc herniation at T11-T12 and L2-L3, and the previously noted pre-existing disc bulge at L4-L5 and/or L3-L4 and some aggravation of the age-related degenerative changes.

3

She went to Florida when school closed for the Christmas holidays to visit her 81 year-old, ailing and infirm parents. Although she had intended to return to work after the holidays, when school resumed, she remained in Florida under an emergency family leave from work and continued to care for her parents until early March. Within two weeks of her return from Florida, Mrs. Hamm claimed to have suffered a work-related injury to her back on March 28, 2011. When she saw a physician on April 13, 2011, to describe the March 28, 2011, work-related accident, she failed to mention the August 15, 2010, accident. She claimed to have suffered another work-related injury to her back on September 21, 2011.

Although Mrs. Hamm testified she was pain-ridden and felt needy and useless after the August 15, 2010, accident, she managed to care for her elderly parents while in Florida without incident or complaint. She received no treatment or physical therapy after the August 15, 2010, accident, even after the December MRI and while she was caring for her parents in Florida, until after the March 28, 2011 work-related accident. When she returned to work in March, 2011, she did so without any restrictions even though her work consisted of repetitive standing, bending and lifting. It was only after the March 28, 2011, work-related accident that she began treatment.

Mrs. Hamm's expert witness, Dr. Weiss, evaluated her on May 10, 2012, when she was 52 years old and weighed 240 pounds. At that time, Mrs. Hamm reported that between the August 15, 2010, and March 28, 2011, accidents she was able to perform without difficulty all 23 of the activities of daily living listed by Dr. Weiss. She had no restrictions on her activities of daily living. Dr. Weiss concluded that following the August 15, 2010, accident, Mrs. Hamm suffered a "permanent orthopedic impairment," the herniated discs at T11-T12 and L2-L3, but that those impairments did not manifest themselves until after the March 28, 2011, accident.

4

When Defendant's IME doctor, Dr. Williams, evaluated Mrs. Hamm, on September 16, 2013, she weighed 235 pounds. He concluded, as did Dr. Weiss, Mrs. Hamm suffered pre-existing degenerative disc and facet disease of the lumbar and thoracic spines and a lumbar sprain/strain as a result of the August 15, 2010, accident. He characterized the sprain/strain injuries as "subjective … unless the sprain or strain is sufficient to severely tear tissues." Dr. Weiss also indicated it was his experience that "depend[ing] on the degree, … most patients recover [from a sprain and strain] within three, perhaps six months at most." He also said it was his experience that patients with a sprain and strain continue to treat with a medical provider "[u]nless they have treated for so long they finally give up." Williams Depo., id., pp. 38:19-41:25; 43:21-44:4. As noted, Mrs. Hamm underwent no treatment between the August 15, 2010, and March 28, 2011, accidents. Furthermore, Dr. Williams concluded the injuries Mrs. Hamm sustained from the March and September, 2011, work-related accidents were not caused by the August 15, 2010, accident.

The relevant principles of law to evaluate whether the verdict was inadequate and against the weight of the evidence are well-settled. "A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it 'shocks ones sense of justice.'" Burnhauser v. Bumberger, 745 A.2d 1256, 1260 (Pa. Super. 2000) (quoting Neison v. Hines, 653 A.2d 634, 636 (Pa. 1995)). "A jury verdict is set aside as inadequate where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." Burnhauser, 745 A.2d at 1261 (citing Kiser v. Schulte, 648 A.2d 1, 4 (Pa. 1994)). "[T]he jury is free to believe all, some or none of the testimony presented by a witness." Neison, 653 A.2d at 637 (citing Gaita v. Pamula, 122 A.2d 63 (Pa. 1956); Algeo v. Pittsburgh Rys. Co, 198 A.2d 415, 416-17 (Pa. Super. 1964)). However, "the verdict must not be

5

a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial." Neison, 653 A.2d at 637 (citing Elza v. Chovan, 152 A.2d 238, 240 (Pa. 1959); Slaseman v. Myers, 455 A.2d 1213, 1215 (Pa. Super. 1983)). "The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." Neison, 653 A.2d at 637. A jury is not required to award plaintiff any amount if it believed the injury suffered in an accident is insignificant. See Holland v. Zelnick, 478 A.2d 885, 888 (Pa. Super. 1984). Further, "jurors are not compelled to find pain where there was no objective injury...it is not a fact of human experience that *every* tort produces *compensable* pain." Boggavarapu v. Ponist, 542 A.2d 516, 519 (Pa. 1988) (emphasis in original). A jury is "not required to accept everything or anything the plaintiff and her doctor said, even if their testimony was uncontradicted." Bronchak v. Rebmann, 397 A.2d 438, 440 (Pa. Super. 1979). There is not "any particular ratio of pain and suffering damages to special damages or any particular dollar figure as automatically constituting inadequacy." Hill v. Com., Bureau of Corrections, 555 A.2d 1362, 1368 (Pa. Cmwlth. 1989) ("Each case must be examined in the light of its unique facts."). See, also, Ricciuti v. Estate of Pohlman, ___ A.3d ___ (Pa.Super. 2015)(No. 706 WDA 2014, decided February 18, 2015).

Mrs. Hamm had a history of back issues before the August 15, 2010, accident. Her description of the force of the collision of Defendant's vehicle with her house was not shared by Mr. Hamm. The injuries the jury was instructed to find – a sprain and strain of her lower back that allegedly aggravated a pre-existing, degenerative condition – are difficult to quantify. Other than some muscle tenderness and spasms, and a contusion on her forearm, no other injuries were

6

noted at the hospital. She was discharged with medications. Although her job required repetitive standing, bending and lifting, she missed only two days of work before returning to work without any restrictions. She cared for her elderly parents in Florida from the end of December until March without incident or complaint. She underwent no treatment after the August, 2010, accident until after the March 28, 2011, work-related accident and, even then, did not mention the August, 2010, accident.

The jury, in its collective wisdom, concluded $1,000.00 was the appropriate amount of compensatory damages for those injuries Mrs. Hamm sustained as a result of the August, 2010, accident. Plaintiffs' references in their brief to cases where the jury awarded no damages are inapposite because here the jury did award damages. The jury was free to evaluate Mrs. Hamm's credibility and compensate her for only the portion of her injuries it attributed to the August 15, 2010, accident. To reject the jury's award would be to substitute the court's judgment for that of the jury. Consequently, the jury's award of compensatory damages will not be disturbed.

Plaintiffs next claim the Court erred in failing to give Pennsylvania Suggested Standard Jury Instruction 7.90, or an equivalent charge, on other contributing causes and their requested supplemental points for charge 1 and 2 regarding causation of subsequent injuries arising from an impaired physical condition caused by the August 15, 2010, accident.

The subcommittee notes following Instruction 7.90 make it clear that the instruction is relevant to past injuries that contributed to a plaintiff's injury in a current accident. As the subcommittee note following Instruction 7.90 states, citing Majors v. Broadhead Hotel, 205 A.2d 873 (Pa. 1965), "The Supreme Court's standards in such situations clearly announce that the defendant is liable for the plaintiff's entire *present* condition, even though a *prior* condition may have been a contributing cause to the plaintiff's present complaints." (Emphasis added.) In other

7

words, a tortfeasor would be responsible for all injuries the plaintiff suffered as a result of that tortfeasor's actions even though the plaintiff's prior condition contributed to the plaintiff's present complaints. To state it more casually, the tortfeasor accepts the plaintiff as the plaintiff existed at the time of the negligent act. Here, Mrs. Hamm sought to make Defendant responsible for the subsequent injuries she sustained from the March and September 2011, work-related accidents.

Plaintiffs' authority in support of their position is unavailing. Marshall v. City of Pittsburgh, 180 A.733 (Pa. Super 1935), is a workmen's compensation case, not a negligence action. In Nikisher v. Benninger, 377 Pa. 564, 105 A.2d 281 (Pa.1954), the plaintiff was convalescing from a broken leg suffered as a result of an automobile accident when he placed weight on the injured leg which failed to support him and, as a result, he fell and injured the same leg as the original injury. There was no evidence of negligence as to the second injury; rather, the issue was whether the injured leg gave way from weakness as a result of the first accident. There was no independent, subsequent accident. The Supreme Court stated: "If in truth and in fact the second accident was caused by the weakened condition of the leg due to the original accident, the second injury may properly be referred back to the original injury." 105 A.2d at 284. Here, there was no evidence or offer of proof to believe Plaintiff's second or third accident -- her work-related accidents in March and September, 2011 -- were caused by injuries sustained from her first accident. In Bender v. Welsh, 344 Pa. 392, 25 A.2d 182 (Pa. 1942), the plaintiff contended her subsequent fall was attributable to the failure of the limb injured in the first accident to function properly, i.e. the result of the original injury; the defendant contended the plaintiff slipped from an independent cause and that therefore the original accident was not responsible for the subsequent injuries. As the court stated: "Evidence of a subsequent injury is

8

admissible to affect the measure of damages on the original injury only if the subsequent injury was proximately caused by the original negligence." 25 A.2d at 185. See, also, Pa. Trial Guide, "Damages, Death Actions, Consortium," § 6.4 (Defendant not liable for subsequent accident if subsequent accident not caused by the impairment resulting from original injuries.)

While Mrs. Hamm's injuries sustained in the second and third accidents may have been exacerbated because of a compromised condition resulting from the August, 2010, accident, there was no evidence to believe either of the March or September, 2011, accidents was caused by the injuries incurred from the August, 2010, accident. Defendant is only responsible to Mrs. Hamm as he found her in August 2010, and it would have been inappropriate to instruct the jury that Defendant should be liable to Mrs. Hamm for her independent, work-related injuries in March and September, 2011, simply because he may have contributed to her physical condition as it existed in March and September 2011.

Next, Plaintiffs contend the Court erred by failing to preclude Defendant's IME doctor, Dr. Williams, M.D., from testifying concerning his review of Mrs. Hamm's MRI films on the bases Dr. Williams's testimony concerning his review of MRI films was not contained in his expert report and Dr. Williams gained access to those films by violating discovery rules and medical rules for acquiring patient information.

Dr. Williams's testimony was limited to agreement with reports by the radiologist, and his review of Mrs. Hamm's films was simply a confirmation that he agreed with the radiologist. Therefore, Dr. Williams's opinion was fully revealed to Plaintiffs, and no new or potentially prejudicial conclusions were set forth. See Woodard v. Chatterjee, 827 A.2d 433, 441 (Pa. Super. 2003) ("The purpose of [the fair scope rule] is '[t]o prevent incomplete 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor.' In

9

other words, the fair scope rule 'favors the liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise.'" (internal citations omitted)). The content of Dr. Williams's testimony did not present prejudicial surprise. On the issue of Dr. Williams's access to Mrs. Hamm's MRI films, Plaintiffs contend that by accessing the films on the Lehigh Valley Hospital Network Computer System, Dr. Williams engaged in the ex parte acquisition of a patient's information in violation of discovery rule Pa.R.C.P. No. 4003.6. However, Dr. Williams had Mrs. Hamm's consent to review her films. Dr. Williams apparently took it upon himself to access Mrs. Hamm's films through a different medium, the Lehigh Valley Hospital's computer system, rather than utilize the films copied and produced through the litigation process that he concluded made them difficult to read. He did not exceed the scope of Mrs. Hamm's consent. The record does not suggest Dr. Williams' testimony prejudiced Mrs. Hamm or improperly affected the verdict in any way.

Finally, as to Defendant's claim that the punitive damage award should be reduced, "[i]t is the rule in Pennsylvania that an award of exemplary damages must bear a reasonable proportion to the award of actual damages." Mitchell v. Randall, 137 A. 171, 172 (Pa. 1927). "The size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." Shiner v. Moriarty, 706 A.2d 1228, 1241 (Pa. Super. 1998).

In State Farm Mut. Auto. Ins. Co. v. Campbell. 538 U.S. 408 (2003), the United States Supreme Court held that a punitive damages award of $145 million, where full compensatory damages are $1 million, was excessive and violated the Due Process Clause of the Fourteenth Amendment.

10

Campbell noted that "punitive damages serve a broader function [than compensatory damages]; they are aimed at deterrence and retribution." Id. at 416. "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." Id. at 417. The Court in Campbell begins by stating that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Id. at 419 (quoting BMW of N. America, Inc. v. Gore, 517 U.S. 559, 575 (1996)). "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability...is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Id. (citing Gore, 517 U.S. at 575). Next, when reviewing an award of punitive damages, Campbell instructs that a court should look to the "disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." Id. at 418. Campbell "decline[d] to impose a bright-line ratio which a punitive damages award cannot excess," but noted that awards exceeding a single-digit ratio may potentially violate due process. Id. at 425. While "single digit multipliers are more likely to comport with due process," greater ratios "may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages." Id. Lastly, Campbell instructs courts to examine "the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'"

Considering the factors set forth in Campbell, the award of $10,000 for conduct of driving while intoxicated, which the jury found to be outrageous and with a reckless indifference to the interests of others, does not shock the conscience of the court even in relation to the amount of compensatory damages it awarded to Mrs. Hamm. The ratio here between the punitive

11

and compensatory damages of 10:1 is just beyond the single-digit range favored in Campbell, id. at 425. That is not an unconscionable result.

Finally, as the issue was raised by Defendant, although wealth has been considered as a factor in determining an appropriate amount of punitive damages in cases in Pennsylvania, see Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 803 (Pa. 1989) (citing Section 908(2) of the Restatement (Second) of Torts), evidence of wealth is not a prerequisite as to whether punitive damages may be imposed. Vance v. 46 and 2, Inc., 920A.2d 202, 206-207 (Pa. Cmwlth. 2007). In any event, Defendant testified he was employed at the time of the accident and at the time of trial. The punitive damages award of $10,000.00 imposed by the jury is reasonable, serves as both a punishment and deterrent, and will not be disturbed by the court.

March 16, 2015

_____
Edward D. Reibman,         J.

12