J-A29034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EUGENE BENJAMIN AND LATISHA BENJAMIN, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER P. HENDERSON, M.D. AND SCRANTON ORTHOPAEDIC SPECIALISTS, P.C. | : | No. 715 MDA 2020 |
| | : | |
| APPEAL OF: EUGENE BENJAMIN | : | |

Appeal from the Judgment Entered April 17, 2020
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  17-CV-913

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 04, 2021**

In this medical malpractice case, Appellant, Eugene Benjamin,[1] appeals

from the judgment entered on April 17, 2020, in his favor in the amount of

$50,000.00, and against Appellees, Christopher P. Henderson, M.D., and

Scranton Orthopaedic Specialists, P.C.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Latisha Benjamin withdrew her claim for loss of consortium prior to trial.

In its opinion, the trial court set forth the relevant facts of this case. *See* Trial Court Opinion, filed April 16, 2020, at 1-4.[2] Therefore, we have no reason to restate them at length here. For the convenience of the reader, we briefly note that, following a work-related injury, Appellant underwent three lumbar spine surgeries performed by Dr. Henderson between September and December 2015. *Id.* at 1-3.

On February 1, 2017, Appellant brought this suit for alleged negligence by Appellees. *Id.* at 4. After completion of a status conference, the trial court issued an order on February 1, 2018, setting deadlines for discovery, submission of expert reports, and submission of other motions. *Id.* at 8. The order directed, *inter alia*, that all supplemental or rebuttal reports of any expert witness were due by October 30, 2018. Appellant "produced the August 15, 2018 initial expert report of [John O. Grimm, M.D.,] in support of his claims on August 20, 2018." *Id.* Appellant "then produced another report of Dr. Grimm dated December 12, 2018, and produced the expert report of [Linda Lajterman, R.N., his damages expert,] on December 24, 2018." *Id.* Prior to the commencement of trial, Appellees filed motions *in limine* seeking to preclude certain opinions contained in Dr. Grimm's supplemental expert

---

[2] The trial court entered two opinions on April 16, 2020 – a 31-page decision denying Appellant's motion for post-trial relief and a supplemental five-page decision denying Appellant's motion to re-open the record. Citations throughout this brief to "Trial Court Opinion, filed April 16, 2020," refer to the former.

report and to preclude the entirety of Nurse Lajterman's untimely report, along with her opinions and testimony. The trial court granted the motions.

Trial commenced on January 22, 2019. *Id.* at 4. During *voir dire*, Venireperson Number One and Venireperson Number Six both stated that they may not be able to be fair and impartial due to Appellant's criminal history. N.T., 1/22/2019, at 31, 56. However, Venireperson Number One acknowledged that any previous mistakes on Appellant's part "would have nothing to do with what happened here [in this case]." *Id.* at 31. The following exchange then occurred during Venireperson Number Six's individual *voir dire*:

> [APPELLANT'S COUNSEL]: Are you able to fully put it aside and go in with a completely open mind and say all right, let's see what the evidence shows?
>
> [VENIREPERSON NUMBER SIX]: I would certainly try, but you have to realize that that bias existed.
>
> [APPELLANT'S COUNSEL]: Okay, thank you.
>
> THE COURT: Well, I appreciate your candor, but you just said that you would be like everybody else in the jury room.
>
> [VENIREPERSON NUMBER SIX]: Yeah, definitely try that.

*Id.* at 60-61. Appellant moved to have both of these venirepersons dismissed for cause, but the trial court denied the motions.

Also during *voir dire*, Venireperson Number Eighteen admitted that his wife is a nurse, that his daughter and son-in-law were both doctors, and that he is "a very biased father." *Id.* at 100. His individual *voir dire* continued:

- 3 -

[VENIREPERSON NUMBER EIGHTEEN]: So do I have a slant to favoring and appreciating what doctors do? Yeah. Did I have that 20 years ago? No. But I certainly do now.

[APPELLANT'S COUNSEL]: And is that going to play a role in your decision making in this case or could it?

[VENIREPERSON NUMBER EIGHTEEN]: I guess I could say it could. It would? I can't answer that. It could, yes, to be honest.

[APPELLANT'S COUNSEL]: I guess the question I'm asking is can you guarantee it won't?

[VENIREPERSON NUMBER EIGHTEEN]: No.

THE COURT: If I instruct you such emotions shouldn't enter into your deliberations, along with the jury, are you going to be able to follow the law and do that?

[VENIREPERSON NUMBER EIGHTEEN]: I would try my best, but even though I respect you and the office you hold I can't give you an absolute. If there would be no bias on my part, I can't do that. But I would do my best to follow your instructions and follow them completely to the best of my ability.

*Id.* at 101. Appellant moved to have Venireperson Number Eighteen dismissed for cause, which the trial court denied.[3]

At trial, "the jury was presented with evidence regarding the seriousness of [Appellant]'s injuries and his need for future care." Trial Court Opinion, filed April 16, 2020, at 13. Appellant "testified that he suffered back pain prior to his surgeries with Dr. Henderson[.]" *Id.* His testimony continued:

[APPELLANT'S COUNSEL]: Now, the third surgery, did it help?

[APPELLANT]: Yes, sir.

---

[3] Appellant does not claim that Venirepersons Number One, Six, and Eighteen were seated on his jury. Appellant's Brief at 55 n.15. Instead, Appellant used his preemptory challenges to strike these potential jurors.

- 4 -

[APPELLANT'S COUNSEL]:     In what way?

[APPELLANT]:     It freed everything up.  I was able to use my leg again.  It wasn't dragging.  The only thing was I couldn't lift my toes no more still.  It didn't bring everything back.  But I was told in time it could still heal and but it didn't.  I was told that nerves regenerate so much every so often, so I had hopes that it was going to fully return.

N.T., 1/23/2019, at 301.

At the close of evidence, the [trial] court provided this instruction to the jury.[7]

> [7] Throughout the instruction, the bold language identifies where the present jury instruction differs from the Pennsylvania Suggested Standard Jury Instruction.

Mr. Benjamin has made a claim for a damage award for past and future noneconomic loss.  If you find in his favor and determine that an award of damages for past and future non-economic loss is appropriate, **you must consider that there are several items that make up an award for non-economic loss**, both past and future:  pain and suffering, embarrassment and humiliation, loss of ability to enjoy the pleasures of life, and disfigurement.[8]

**First, Mr. Benjamin *must* have experienced pain and suffering in order to be able to claim damage awards for past non-economic loss and future noneconomic loss.**[9]  You are instructed that he is entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience, and distress that you find he has endured from the time of the injury until today, and that he's also entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience, and distress, which you find he will endure in the future as a result of his injuries.

**Second, Mr. Benjamin *must* have experienced embarrassment and humiliation in order to claim non-economic loss.**[10]  He is entitled to be fairly and adequately compensated for such embarrassment and humiliation as you believe he has endured and will continue to endure in the future as a result of his injuries.

**Third, Mr. Benjamin *must* suffer a loss of enjoyment of life.**[11]  He is entitled to be fairly and adequately compensated for the loss of his ability to enjoy any of the pleasures of life as a result of the injuries from the time of the injuries until today, and to be fairly and adequately compensated for the loss of his ability to enjoy any of the pleasures of life in the future as a result of the injuries.

**There *must* also be disfigurement.**[12] The disfigurement that Mr. Benjamin has sustained is an item of damages recognized by the law.  So in addition to any amount you consider for pain and suffering for embarrassment or humiliation and for loss of enjoyment of life, the Plaintiff is entitled to be fairly and adequately compensated for the disfigurement he has suffered from the time of the injury to present, and that he will continue to suffer during the future duration of his life.

8 The Pennsylvania Suggested Standard Jury Instruction reads, "[t]here are four items that make up a damage award for noneconomic damages, both past and future: (1) pain and suffering; (2) embarrassment and humiliation; (3) loss of ability to enjoy the pleasures of life; and (4) disfigurement." 14.150 MEDICAL MALPRACTICE-DAMAGES (UNDER THE MCARE ACT, EFFECTIVE FOR ALL CLAIMS ARISING SUBSEQUENT TO MARCH 20, 2002), Pa. SSJI (CIV), 14.150.

9 The Pennsylvania Suggested Standard Jury Instruction reads, "[t]he first item to be considered in the plaintiff[']s claim for damage awards for past noneconomic loss and for future noneconomic loss is pain and suffering." *Id.*

10 The Pennsylvania Suggested Standard Jury Instruction reads "[t]je second item that goes to make up noneconomic loss is embarrassment and humiliation." *Id.*

11 The Pennsylvania Suggested Standard Jury Instruction reads "[t]he third item is loss of enjoyment of life." *Id.*

<sup>12</sup> The Pennsylvania Suggested Standard Jury Instruction reads "[t]he fourth and final item is disfigurement." ***Id.***

Trial Court Opinion, filed April 16, 2020, at 15-16 (bold emphasis in original; italicized emphasis added) (some footnotes omitted) (quoting N.T., 1/25/2019, at 264-66).

Appellant's counsel objected to the above bolded language from trial court's instruction on noneconomic damages. Following a sidebar conference, the trial court agreed with Appellant's counsel. N.T., 1/25/2019, at 271. The trial court gave a curative instruction, which appears below in its entirety:

> Members of the jury, when I was going through the different items that comprise past and future non-economic loss, I said to you that the Plaintiff **must** have experienced embarrassment and humiliation in order to recover for non-economic loss. If you are going to make an award for that portion of non-economic loss, **he's got to have presented evidence of that**. These are not cumulative. They're separate items. One is not dependent upon the other. You look at each one, and if there's evidence to support it, and you feel he's entitled to that, then you can award pain and suffering. If you feel he hasn't met his burden for embarrassment and humiliation, but he has for pain and suffering, you can award pain and suffering and not for embarrassment and humiliation. They're not dependent upon each other.

N.T., 1/25/2019, at 271-72 (emphasis added). The curative instruction made no mention of loss of ability to enjoy the pleasures of life or disfigurement as the other two categories of non-economic damages. ***See id.*** After the curative instruction was given, the jury was excused to begin deliberations. ***Id.*** at 279. Appellant's counsel did not object to the curative instruction, even after the trial court asked counsel whether it had any "Questions?" ***Id.***

"[T]he jury returned a verdict in favor of [Appellant] awarding him $50,000.00." Trial Court Opinion, filed April 16, 2020, at 12.[4] On May 11, 2020, Appellant filed this timely appeal.[5]

Appellant now presents the following issues for our review:

1.     Whether this Court should reverse the trial court's denial of [Appellant]'s post-trial motion and order a new damages trial where the trial court erroneously precluded [Appellant] from presenting the opinions in the Grimm Supplemental Report and the Lajterman Report despite no bad faith and no prejudice as defendants possessed a rebuttal report 12 days before trial but hid that information.

2.     Whether this Court should reverse the trial court's denial of [Appellant]'s motion for post-trial relief and order a new damages trial where the $50,000 verdict shocks the conscience, is against the weight of the evidence and warrants a new damages trial given the substantial, undisputed damages evidence.

3.     Whether the trial court's erroneous denial of [Appellant]'s challenges for cause during *voir dire* when panelists specifically stated they could not put their bias aside warrants a new damages trial.

4.     Whether a new damages trial should be granted where the trial court's jury charge on noneconomic damages misstated the law and misled the jury on a critical issue.

Appellant's Brief at 4 (suggested answers omitted).

_____

[4] The verdict sheet did not divide damages into itemized categories. ***See*** Verdict Sheet, 1/25/2019. Instead, after the interrogatories about liability, the sole interrogatory concerning damages was: "State the amount of damages, if any, that you award to the Plaintiff, Eugene Benjamin." ***Id.*** at Question 3. The jury wrote next to it, "$50,000 fifty thousand dollars." ***Id.***

[5] Appellant filed his statement of errors complained of on appeal on May 28, 2020. On June 3, 2020, the trial court entered an order that its prior opinions would serve as its statement pursuant to Pa.R.A.P. 1925(a).

**Expert Reports**

Appellant first contends that the trial court erred by precluding the supplemental report of Dr. Grimm on the issue of future medical needs and the report of Nurse Lajterman on the issue of future medical costs. Appellant's Brief at 23. He argues that this allegedly improper exclusion of relevant material evidence is grounds for a new trial on damages only. *Id.*

> Our standard of review for the challenges to the admission of expert testimony is as follows:
>
>> The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.
>
> *Nobles v. Staples, Inc.*, 150 A.3d 110, 113 (Pa. Super. 2016) (citations and internal quotation marks omitted).
>
> Our Rules of Evidence vest the trial court with the authority to determine the admissibility of evidence as well as to control the scope of examination. *See Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 585 (Pa. Super. 2003).

*Farese v. Robinson*, 222 A.3d 1173, 1185 (Pa. Super. 2019), *reargument denied* (January 13, 2020).

Pennsylvania Rule of Civil Procedure 1042.32 governs the admissibility of additional or supplemental expert reports:

> **Until a deadline set by the court for the production of expert reports has passed** or unless the court has precluded such production, a party may serve additional and supplemental expert reports without leave of court. These reports may

> introduce new theories of liability or causation or new defenses, and may be prepared by other experts.

Pa.R.C.P. 1042.32 (emphasis added).

Additionally, Pennsylvania Rule of Civil Procedure 4003.5 governs the discovery of expert testimony, including:

> An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.C.P. 4003.5.

> Pennsylvania Rule of Civil Procedure 4003.5 requires parties to timely submit their expert reports, and confines the expert's testimony to the scope of those reports, to avoid unfair surprise. *See Woodard v. Chatterjee*, 827 A.2d 433, 445 (Pa.Super. 2003) (citing comment to Rule 4003.5(c) for proposition that the rule is intended "to prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor"); *see also Jones v. Constantino*, 429 Pa.Super. 73, 631 A.2d 1289, 1294 (1993) (noting the fair scope rule "disfavors unfair and prejudicial surprise"). In such situations, trial courts may exclude the offending testimony entirely or, in some cases permit the opposing party to depose the witness during trial.

*Gregury v. Greguras*, 196 A.3d 619, 630–31 (Pa. Super. 2018) (*en banc*), *appeal denied*, 205 A.3d 1230 (Pa. 2019). Furthermore, Pa.R.C.P. 4003.5(b) "give[s] the trial court discretion to preclude expert trial testimony *at any pre-trial date*[.]" *Kurian ex rel. Kurian v. Anisman*, 851 A.2d 152, 161 (Pa. Super. 2004) (emphasis in original).

- 10 -

With these Rules and case law in mind and after a thorough review of the record, the briefs of the parties, and the well-reasoned analysis of the Honorable James A. Gibbons, we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question:

Dr. Grimm's December 12, 2018 report was produced well over a month beyond the October 30, 2018 deadline for production of [Appellant]'s supplemental expert reports. In addition to being untimely, the opinions expressed by Dr. Grimm in the final two paragraphs of his supplemental report offered new opinions concerning damages regarding future care needs and future damages of [Appellant] which were not included in his original report. This was not merely an attempt to clarify or elaborate on opinions expressed in the original report. This was a clear attempt to delineate specific medical procedures and treatment to provide a foundation for the as yet to be disclosed report of Nurse Lajterman.

Nurse Lajterman's December 24, 2018 report was produced five months after the August 16, 2018 deadline for production of [Appellant]'s expert reports, and less than one month prior to trial which was scheduled to commence on January 22, 2019. In addition to her report being untimely, Nurse Lajterman had never been identified in discovery as a potential expert witness that [Appellant] expected to call prior to the production of her report.[3] In her report Nurse Lajterman projected costs of [Appellant]'s future medical care to be $1,340,426.16. During argument on the motions in *limine*, [Appellant]'s counsel admitted that Nurse Lajterman's opinion was "based almost entirely on the supplemental [report of Dr. Grimm]." Notes of Testimony ("N.T."), Jan. 14, 2019, pp 42-43. Thus, [Appellant] attempted to introduce completely new expert testimony on the future care needs and damages of [Appellant] one month before trial.

[3] According to [the] February 1, 2018 Order, the discovery deadline was July 2, 2018.

Dr. Grimm's supplemental report and Nurse Lajterman's expert report were both produced well past the [trial] court's deadlines

for production of expert and supplemental reports as listed in the February 1, 2018 Scheduling Order. The introduction of these late and new expert opinions at trial were disclosed (along with the identity of Nurse Lajterman as potential expert witness) in violation of the court-imposed deadlines and too close to trial.[4] [The trial court] acted properly within [its] discretion under Rule 4003.5(b) in precluding those reports and/or expert testimony from being introduced at trial.

> [4] . . . [Appellant] neither sought any extension of [the] deadline nor leave to submit his reports out of time.

Trial Court Opinion, filed April 16, 2020, at 8–9 (some formatting). Consequently, we find Appellant's first challenge to be meritless on the basis of the trial court's opinion.

**Inadequate Verdict**

Next, Appellant maintains that "the trial court erred in denying [his] motion for a new trial as to damages because the verdict shocks the conscience and is against the weight of the uncontradicted evidence." Appellant's Brief at 36. This allegedly "uncontradicted evidence" was Dr. Grimm's "trial testimony relating to [Appellant]'s injuries and treatment[.]" *Id.* at 39. Appellant claims that Dr. Grimm's testimony was "consistent" with the testimony of Dr. Henderson. *Id.* at 36, 39, 43.

This Court has noted that the standard of review from a denial of a request for new trial on the basis of an inadequate verdict against the weight of the evidence is rigorous:

> It is hard to imagine a situation which calls for a more deferential standard of review than a weight of the evidence claim. It is the exclusive province of the jury, as factfinder, to hear evidence on damages and decide what amount fairly and completely compensates the plaintiffs. A trial court should be loath to substitute its judgment for the jury's and may do so only in very

- 12 -

limited circumstances.  We have often used the image of "injustice shining forth like a beacon" to describe the rare situation which could justify a trial court's decision to upset a jury verdict and grant a new trial.  ***See, e.g., Bortner v. Galdfelter***, 302 Pa.Super. 492, 448 A.2d 1386 (1982).  But the trial court is at least in a position to make an informed judgment to overturn a jury verdict, since it had an opportunity to observe the witnesses and evaluate credibility.  ***See Coker v. S.M. Flickinger Co., Inc.***, 533 Pa. 441, 625 A.2d 1181 (1993) (trial court is uniquely qualified to evaluate factual matters, and thus can have a basis for rejecting a jury verdict and granting a new trial).

Review of a cold record acts much like the inverse square law of light propagation—any beacon of injustice will necessarily appear even dimmer to our eyes than it was to the trial court's.  We should therefore be exceptionally hesitant to disregard both a jury verdict and the trial court's evaluation of the evidence, and order a new trial at plaintiffs' behest.  Indeed, our high court has stated:

> When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, **in the absence of a gross abuse of discretion, will not interfere**.  When a trial court *refuses* to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action.

***Black v. Ritchey***, 432 Pa. 366, 369, 248 A.2d 771, 773 (1968) (emphasis in original, citations omitted).  We therefore may only reverse the trial court if we are convinced that it committed **something even worse than a gross abuse of discretion**.

***Matheny v. West Shore Country Club***, 648 A.2d 24, 24-25 (Pa. Super. 1994) (bold emphasis added; italicized emphasis in original); ***see also Commonwealth v. Roane***, 204 A.3d 998, 1001 (Pa. Super. 2019) ("When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion.  A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice." (internal citations and quotation marks omitted)).

"[A] jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison v. Hines*, 653 A.2d 634, 637 (Pa. 1995).

Contrary to the assertion in Appellant's brief that all of the evidence was "uncontradicted," Appellant's own testimony undermines this contention. Appellant testified that he suffered back pain prior to his first surgery with Dr. Henderson and his condition improved after his third surgery with Dr. Henderson. N.T., 1/23/2019, at 301; Trial Court Opinion, filed April 16, 2020, at 13. Additionally, he testified that, after this third and final surgery, he felt relief from pain. N.T., 1/23/2019, at 301. The jury, as factfinder, could have heard Appellant's own testimony that he had pain prior to his surgeries and had relief after them, determined that his damages thus were minimal, and concluded that $50,000.00 in damages would fairly and completely compensate him. *See Matheny*, 648 A.2d at 24. "The mere fact that a verdict is low does not mean that it is inadequate." *Hilscher v. Ickinger*, 166 A.2d 678, 680 (Pa. Super. 1960). Since this award is based on the evidence, we are loath to substitute our judgment for the jury's. *See Matheny*, 648 A.2d at 24. For these reasons, we agree with the trial court that the verdict of $50,000.00 in compensatory damages does not shock the conscience and is not against the weight of the evidence. *See* Trial Court Opinion, dated April 16, 2020, at 12-14. Ergo, Appellant's second appellate issue is likewise without merit.

## Jury Selection

Appellant next claims that the trial court erroneously denied his challenges for cause during *voir dire*, requiring him to exhaust his preemptory challenges. Appellant's Brief at 55. He specifically urges this Court to find that: Venireperson Number One "clearly communicated she could not be impartial"; Venireperson Number Six "admitted he was prejudiced"; and Venireperson Number Eighteen "admitted to bias in favor of medical professionals." *Id.* at 57, 59-60. Appellant asserts that these allegedly erroneous denials resulted in a "severely compromised jury selection process" and "warrant[] a new trial on damages." *Id.* at 55, 57.[6]

> "The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion." *Commonwealth v. Ingber*, 531 A.2d 1101, 1103 (Pa. 1987) (citations omitted).
>
> The purpose of examining prospective jurors is to "ascertain[ ] whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict." *Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa. Super. 2016) (quoting *Ingber*, 531 A.2d at 1103). "[T]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence." *Id.* (quoting *Commonwealth v. DeHart*, 516 A.2d 656, 663 (Pa. 1986)). In other words, the relevant inquiry "is whether any biases or prejudices can be put aside upon the proper instruction of the court." *Id.* (quoting *Ingber*, 531 A.2d at 1103).
>
> The decision whether to disqualify a prospective juror "is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." *Id.* (quoting *DeHart*, 16 A.2d at 663). Appellate

---

[6] Appellant does not allege that any of the jurors who actually sat on the jury exhibited bias during *voir dire*. *See* Appellant's Brief at 55-61.

courts defer to the trial court's assessment of a prospective juror's answers during *voir dire* because the trial court is "in the best position to assess the [prospective juror's] credibility and fitness to serve[.]" ***Commonwealth v. Cox***, 983 A.2d 666, 683 (Pa. 2009).

***Commonwealth v. Wiggins***, No. 1668 EDA 2015, unpublished memorandum at 11-12 (Pa. Super. filed July 19, 2019) (*en banc*).[7] Where an appellant "has not demonstrated that the process deprived him of a fair and impartial jury, neither do we conclude that Appellant suffered actual prejudice." ***Commonwealth v. Noel***, 104 A.3d 1156, 1172 (Pa. 2014) (plurality).

After a thorough review of the record, the briefs of the parties, the above applicable law, and the well-reasoned analysis by Judge Gibbons, we conclude Appellant's issue merits no relief. Appellant does not contend and the record does not support that Venirepersons Number One, Six, and Eighteen were ultimately selected for his jury. In the absence of such evidence, Appellant cannot demonstrate a likelihood of prejudice. As Appellant cannot demonstrate that the *voir dire* process deprived him of a fair and impartial

_____

[7] Pursuant to Pa.R.A.P. 126(b) (effective May 1, 2019):

> (1) As used in this rule, "non-precedential decision" refers to an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019 . . .

> (2) Non-precedential decisions as defined in (b)(1) may be cited for their persuasive value.

jury, we cannot conclude that he suffered actual prejudice. ***See Noel***, 104 A.3d at 1172; ***see also Wiggins***, No. 1668 EDA 2015, at 11-12.

To the extent that Appellant argues that the trial court's denial of his motions to strike these venirepersons for cause required him to "exhaust[] his four peremptory challenges, using three on these panelists[,]" Appellant's Brief at 55 n.15, we would still find that the trial court did not abuse its discretion in denying Appellant's motions, as all three venirepersons specifically informed the trial court that they would be able to decide the case based on the evidence. N.T., 1/22/2019, at 31, 60-61, 101. Accordingly, the trial court did not abuse its discretion when it declined to disqualify these venirepersons, as all three expressed their "ability and willingness to eliminate the influence of [their] scruples and render a verdict according to the evidence." ***Wiggins***, No. 1668 EDA 2015, at 12 (citation omitted).

## Jury Instructions

Finally, according to Appellant, "a new trial on damages should be granted because the jury charge on noneconomic damages misstated the law." Appellant's Brief at 62.

At trial, following Appellant's counsel's objection to the charge about non-economic damages and a related sidebar, the trial court re-instructed the jury on the elements of non-economic damages. N.T., 1/25/2019, at 271-72. Appellant's counsel did not object to this curative instruction, even when given the opportunity to do so by the trial court. ***Id.*** at 279.

"[T]he jury is presumed to follow cautionary instructions and appellant's failure to object to the instruction indicated his satisfaction with the instruction. *See* [*Commonwealth v.*] *Morris*, [] 519 A.2d [374,] 378 [(Pa. 1986)] (failure to object to cautionary instruction indicates defendant's satisfaction)." *Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995).

In the current action, Appellant failed to object to the trial court's cautionary or curative instruction, N.T., 1/25/2019, at 279, and, accordingly, indicated his satisfaction with the instruction. *Commonwealth v. Jones*, 668 A.2d at 504. Consequently, Appellant has failed to preserve any challenge to the jury instructions on non-economic damages. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

\* \* \*

Accordingly, we find Appellant's final challenge to be waived and all of his remaining, preserved issues to be meritless. For the reasons set forth above, we affirm the judgment.

Judgment affirmed.

Judge Dubow joins the Memorandum.

Judge Kunselman files a Concurring Memorandum in which

Judge Dubow joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/04/2021